UNION BOND AND MORTGAGE COMPANY, Respondent, v. BROWN, et al, Appellant.

(269 N. W. 474.)

(File No. 7924. Opinion filed November 9, 1936.)

*W. M. Potts,* of Mobridge, and *Sterling, Clark & Grigsby,* of Redfield, for Appellant.

*Churchill & Benson,* of Huron, for Plaintiff-Respondent.

*Longstaff & Gardner,* of Huron, for Defendant-Respondent H. P. Brown.

CAMPBELL, J. The above cause is now before us for disposition on the merits, and the first question to determine is just what matters are open for our consideration. In so far as this purports to be an appeal from the denial of new trial below, it has already been dismissed as to defendant-respondent H. P. Brown (same title (1936) 64 S. D. 352, 266 N. W. 720) and likewise by Per Curiam opinion this day filed as to plaintiff-respondent Union Bond & Mortgage Company (same title, 64 S. D. 596, 269 N. W. 472). As pointed out in the opinion last cited, the right of plaintiff-respondent to such dismissal is derivative from the right of H. P. Brown. Appellant cannot present as against Union Bond & Mortgage Company any different or more comprehensive questions than he has entitled himself to present as against defendant-respondent H. P. Brown.

It must be remembered that appellant not only failed to move for new trial upon H. P. Brown, but likewise failed to serve him with transcript of testimony and specifications of error (see same title, 64 S. D. 352, 266 N. W. 720). H. P. Brown, therefore, is not bound either by the attempted proceedings to move for new trial or by the proceedings looking toward the settlement of the record. So far as he is concerned, the appeal amounts, in substance, to an appeal from the judgment only, taken upon the judgment roll, and he is not bound to meet any contentions of appellant which require as a prerequisite to their consideration either the settlement of a record or the making of a motion for new trial and appeal from the denial thereof. It necessarily fol-

lows that no other questions can be raised by appellant as against Union Bond & Mortgage Company. Consequently the matter must stand as to both respondents as an appeal from the judgment only, upon a judgment roll, without a settled record, and without a motion for new trial prior to judgment, the judgment in this case having been entered in November, 1935, and the motion for new trial not having been made until January 6, 1936. Cf. Gade v. Collins (1896) 8 S. D. 322, 66 N. W. 466; Hagaman v. Gillis (1896) 9 S. D. 61, 68 N. W. 192; Keyes v. Baskerville (1919) 42 S. D. 381, 175 N. W. 874. To review errors in law occurring at the trial and excepted to (R. C. 1919, § 2555, subd. 7) requires a settled record, and to review the sufficiency of the evidence to support the findings requires both a settled record and an appeal from the denial of a new trial. See Keyes v. Baskerville, supra. The only claims of error, therefore, which appellant is in position to urge upon this record, either as against Union Bond & Mortgage Company or as against H. P. Brown, are those embraced in assignment No. 1 questioning the jurisdiction of the trial court over the person of A. H. Brown for the purposes of this action, and in certain other assignments challenging the sufficiency of the findings of fact to support the conclusions of law and judgment.

For the consideration of the first assignment a brief statement of relevant facts is essential. Appellant A. H. Brown resides at Mobridge in this state and is accustomed to spend his winters in Florida. He has a brother H. C. Brown, now one of the defendants in this action, who resides at Iroquois, S. D. In April, 1929, appellant executed and delivered to his brother H. C. Brown a warranty deed covering a quarter section of land in Armstrong county, S. D.; the name of the grantee being left blank. Thereafter, and in April, 1930, H. C. Brown, with the assistance of one Flowers, traded this Armstrong county land for certain property in the city of Springfield in this state. The name of the owner of the Springfield property was filled in as grantee in the deed from A. H. Brown covering the Armstrong county land, and title to the Springfield property appears to have been taken in the name of H. C. Brown. Subsequently, and in August, 1930, H. C. Brown and Flowers traded the Springfield property to one H. P. Brown, a resident of Huron, for two pieces of

property in the city of Huron. Upon this trade one of these Huron properties was deeded to Flowers, the associate of H. C. Brown in the transaction, and is in no manner involved in this proceeding. Deed to the other property acquired on the trade was taken, however, at the request of H. C. Brown, in the name of his brother, the appellant herein, and was so executed by the grantor H. P. Brown. Before the property thus deeded to A. H. Brown was acquired by H. P. Brown, it had been owned by Herman Strobel and Amanda, his wife, who in March, 1929, had executed and delivered to plaintiff Union Bond & Mortgage Company a first and a second mortgage thereon. The Strobels had transferred the property in March, 1930, to H. P. Brown by warranty deed containing a clause whereby the grantee assumed and agreed to pay the two mortgages thereon. When H. P. Brown, as part of his trade with H. C. Brown and Flowers, and at the request of H. C. Brown, conveyed this property to A. H. Brown, the appellant, he likewise conveyed by warranty deed containing an assumption clause as to the two mortgages. The deed from H. P. Brown to A. H. Brown was executed August 25, 1930, and recorded October 20, 1930. March 25, 1931, appellant A. H. Brown executed a warranty deed with assumption clause conveying the property in question to his brother H. C. Brown, which deed was delivered to and accepted by the grantee shortly after its execution but was never placed of record. In November, 1932, plaintiff mortgage company instituted the present action to foreclose upon this property, naming as defendants Herman Strobel and his wife, who had given the mortgages; H. P. Brown, who had assumed the mortgages by virtue of the clause in the deed from the Strobels to him; A. H. Brown, who, as the records indicated, had likewise assumed the mortgages by virtue of the clause in the deed from H. P. Brown to him; Best & Williams Land Company, a corporation; and H. C. Brown. The last two defendants had never held record title to the premises nor assumed payment of these mortgages so far as plaintiff was advised, nor was any personal judgment asked against them, the allegations of the complaint so far as they were concerned being that they claimed to have some interest in or lien upon the premises, the exact nature of which was unknown to plaintiff, but that said interest, whatever it might be, was junior and inferior to the rights of plaintiff under its mortgages; and

the prayer was for an adjudication to that effect. As to the other defendants, plaintiff sought foreclosure of its mortgages and asked personal judgment for any deficiency against the Strobels, H. P. Brown, and A. H. Brown. The summons in the case was personally served upon A. H. Brown in the state of Florida on December 22, 1932, and upon the other defendants within this state. Defendants H. C. Brown and Best & Williams Land Company defaulted, and no answer was interposed or appearance made by defendant A. H. Brown. The Strobels answered, admitting, in substance, the allegations of the complaint and admitting their personal liability, but alleging that their liability was secondary to that of the subsequent grantees who had assumed the mortgage in their deeds, H. P. Brown and A. H. Brown. H. P. Brown answered, also admitting the facts and admitting his liability, but alleging the same to be secondary to that of the subsequent assuming grantee A. H. Brown. Upon the issues made by the answering defendants and affidavit of default as to the others, the matter came on for trial which resulted in findings, conclusions, and judgment in favor of plaintiff on March 2, 1933, determining the interest of Best & Williams Land Company and H. C. Brown in the premises, if any, to be subsequent and inferior to plaintiff's mortgages and awarding foreclosure of the mortgages to satisfy the amount due including costs of sale ($3,108.46 in all) and granting personal judgment for the deficiency that might arise, if any, against A. H. Brown, H. P. Brown, and the Strobels in the order named. Special execution issued and the property was sold for $1,500 and the sale confirmed by the court on April 21, 1933, leaving a deficiency of $1,608.46.

Thereafter, and on August 17, 1933, defendant-appellant A. H. Brown made his first appearance in the case by filing an affidavit and seeking a show cause order from the trial court. His affidavit and application was in the following form, omitting signatures:

"A. H. Brown being duly sworn says he is one of the defendants in the above entitled action; that all of the records and files in said action as found in the office of the Clerk of the Circuit Court in and for Beadle County, South Dakota, are by this reference made a part of this affidavit as fully as if set out herein; that the said action is for the foreclosure of a real estate mort-

gage on property located in Beadle County, South Dakota, and that a judgment of foreclosure and sale was entered therein by which judgment this affiant was made primarily liable for the payment of the whole amount of said debt amounting to $3,108.46, which judgment is dated March 2, 1933.

"Affiant further states that thereafter, pursuant to a special execution issued on said judgment, the real property therein described was sold by the Sheriff of Beadle County, and on April 5, 1933, an Order confirming said sale was entered by this Court; that said property was sold for $1500.00, leaving a deficiency on said judgment in the sum of $1608.46, and that said deficiency by its terms was rendered against this affiant and other defendants, and makes this affiant primarily liable for the said debt and the other defendants secondarily and thirdly liable.

"Affiant further states that the summons and complaint in this action allege for and pray for the entry of a judgment for the foreclosure of a mortgage; that the said summons and complaint were served upon this affiant personally at West Palm Beach in the State of Florida on or about December 22, 1932; that this affiant was residing at that time and had been for a long time residing at West Palm Beach, Florida; and that believing the said action was brought merely for the foreclosure of the said mortgage, and that affiant was joined as a defendant and service made on this affiant outside of the State of South Dakota merely to facilitate the foreclosure of said action, this affiant did not enter any appearance in said case; and that this affiant relied upon the fact that service of process was made outside of the state as a sufficient protection against the entry of any judgment in personam or personal judgment against this affiant; or for any deficiency judgment against this affiant; and that affiant verily believed that said action was brought for the sole purpose of foreclosing affiant's interest in said real property; that no process in said action, nor summons nor complaint were ever served upon this affiant in the State of South Dakota, and that affiant verily believes that this Court was without jurisdiction, of the person of affiant, and without any jurisdiction to enter a personal judgment or a judgment in personam against this affiant as was done in this action; and that affiant alleges upon information and belief that the judgment

entered was entered inadvertently by this Court, and that same is void and should be vacated and set aside; that the same constitutes a cloud upon affiant's title to real property in the State of South Dakota; that affiant has good and sufficient defense to the deficiency of said action on its merits.

"Wherefore: Affiant prays that an order to show cause be entered herein requiring the plaintiff and the co-defendants of this affiant, above named, to show cause, if any there be, why the said deficiency judgment or personal judgment entered against this affiant should not be vacated, held void and set aside by order of this Court, and for such other and further relief as to the Court may seem equitable and just."

Upon this application the trial court issued its order directing the plaintiff and the other defendants to appear and show cause on September 11, 1933, "why an order should not be entered herein vacating and setting aside and holding void the deficiency judgment entered against the defendant A. H. Brown, on the ground and for the reason that this Court was without jurisdiction to enter the said judgment." The matter coming on for hearing in due course on October 28, 1933, the learned trial judge entered an order entitled "Order Vacating Deficiency Judgment," the material portion of which was as follows:

"It is hereby ordered, adjudged and decreed: That the judgment entered in this action in the Circuit Court of Beadle County on March 2, 1933, in the amount of $3,108.46, insofar as it purports to be a deficiency or personal judgment against the defendant A. H. Brown, be and the same hereby is held void, vacated and set aside on the grounds of lack of jurisdiction to enter same.

"And the Court having determined that the defendant A. H. Brown did not appear herein specially but that he appeared generally and thereby submitted himself to the jurisdiction of the Court especially by his assertion that he had a good defense to the plaintiff's cause of action;

"It is further ordered: That the defendant A. H. Brown be and he hereby is allowed thirty days time from the date of this Order within which to prepare and serve an Answer herein to the merits of the plaintiff's claim for a deficiency judgment; and in

default of such appearance and Answer on behalf of said defendant A. H. Brown,

"It is ordered that plaintiff may, upon making proper proof of the amount of its claim, take judgment herein according to the facts so proven."

Upon this order there was indorsed over the signature of the court these exceptions: "To the making and entering of which said Order the plaintiff excepts as to the part thereof vacating the deficiency judgment heretofore entered, and said exception is allowed; and the defendant A. H. Brown excepts to the portion thereof holding his appearance herein to have been general, and such exception is allowed."

After the entry of the order of October 28 and the allowance of exceptions thereto, defendant A. H. Brown interposed an answer to plaintiff's complaint going to the merits. He denied that he ever assumed or agreed to pay the mortgage indebtedness of plaintiff and alleged, in substance, that he never had any dealings with H. P. Brown, grantor in the deed to him, and that just prior to his departure to Florida in the fall of 1930 the deed in question came to his office with no letter of explanation and without his having given any consideration therefor and that he paid no particular attention to it until his return from Florida in the spring of 1931, when he first discovered that the deed contained a clause assuming mortgages, whereupon he came to Huron to investigate and discovered that the deed had been executed to him as grantee by H. P. Brown in connection with a land trade between H. C. Brown and H. P. Brown and at the request of H. C. Brown; that he had never had any interest in or connection with such trade; that he had never authorized H. C. Brown to have this property deeded to him; that the insertion of his name was without his knowledge, consent, or authority, and that immediately upon discovery of the facts, and in an effort to undo the transaction in so far as he could and place the title to the property in the name of the person to whom it belonged, he executed and delivered a deed similar in form to his brother H. C. Brown, who should have taken title to the property in the first instance from H. P. Brown. All other parties defendant were brought back into the case by order of the court and the matter again proceeded to trial, this time upon

the issues raised by the pleadings of defendant-appellant A. H. Brown, with the result that supplemental findings and conclusions were filed by the court, pursuant to which plaintiff was awarded money judgment for the deficiency after foreclosure sale (now ascertained to be $1,608.46) against H. C. Brown, A. H. Brown, H. P. Brown, and the Strobels in the order named.

Appellant A. H. Brown by his first assignment of error now seeks to present to the court upon this appeal from the supplemental judgment the proposition that the circuit court, by virtue of the service of summons upon him in Florida, acquired no jurisdiction over his person sufficient to support a money judgment; contending that his first appearance in the cause on August 17, 1933, was a special appearance limited to challenging the jurisdiction of the court over his person and that having taken due exception to the court's order of October 28 he did not lose, by subsequently appearing generally and answering to the merits, the right to urge the jurisdictional question upon this appeal, said subsequent general appearance having been by compulsion of the court and not voluntary. Respondent, on the other hand contends: First, that the appearance on August 17, 1933, was in fact a general as distinguished from a special appearance and any defects in service of process were thereby waived; second, that if such appearance was a special appearance, it was nevertheless waived and converted into a general appearance by subsequently answering and going to trial upon the merits.

This court has quite frequently had occasion to consider the tests applicable to determine whether an appearance is special or general. In Robinson v. Glover (1932) 60 S. D. 270, 244 N. W. 322, 323, we repeated the rule deducible from our prior decisions as follows: "These cases announce that an appearance for the sole purpose of challenging jurisdiction over the person is special; that if the appearance in fact is special it need not be so christened, and on the other hand, if it amounts to more than a special appearance, calling it a special appearance will not prevent it from being a general appearance; that the test is the relief asked, in determination of which the court will look to the substance rather than the form; and that the real question is whether there is a submission to the power of the court or an ac-

tive invocation of its power on nonjurisdictional matters." See, also, the cases cited in the Robinson Case and particularly Reedy v. Howard (1898) 11 S. D. 160, 76 N. W. 304; Rogers v. Penobscot Mining Co. (1911) 28 S. D. 72, 132 N. W. 792, Ann. Cas. 1914A, 1184; Chicago, M. & St. P. Rly. v. McClelland (1917) 39 S. D. 191, 163 N. W. 675. Incidentally, we held in the Robinson Case that joining an objection to the jurisdiction over the subject-matter with an objection to jurisdiction over the person did not, standing alone, render general an appearance which was otherwise special. Applying the rule of these cases to appellant's appearance of August 17, 1933, the question of whether such appearance was special or general is by no means free from difficulty. Undoubtedly appellant's affidavit of that date does attack the jurisdiction of the court over his person. However, it is not specifically denominated a special appearance, and it contains language not apt or appropriate to a special appearance challenging the jurisdiction (but which would be appropriate to an application under section 2378, R. C. 1919, to relieve a party from a default judgment because of his inadvertance or excusable neglect), in that appellant recites, in substance, that he did not enter any appearance in the case because he believed the action was brought merely for foreclosure; that he believed he was joined as a defendant merely to facilitate the foreclosure; that he relied upon the fact that he was served outside the state of South Dakota as a sufficient protection against the entry of any personal judgment against him; that he verily believed that the action was brought for the sole purpose of foreclosing his interest in the realty; that he has a good and sufficient defense to the action on the merits; and his prayer is for the vacation of the judgment "and for such other and further relief as to the court may seem equitable and just." Our view upon the other point relating to this matter, however, renders it unnecessary, we think, for us to determine in this case whether the appearance was special or general. We refrain, therefore, from deciding that point and will assume that it was a special appearance.

■ ■ Assuming then, without deciding, that appellant challenged the jurisdiction by special appearance, we turn to the question of whether he has preserved his right to raise that objection

upon this appeal. The court's order of October 28, 1933, hereinbefore quoted, is a rather anomalous document. By the first paragraph it appears the court intended to vacate the judgment for lack of jurisdiction over the person of appellant. Clearly, the circuit court in this case acquired no personal jurisdiction over appellant by the service in Florida. If appellant presented that point by special appearance, then the court should have vacated the judgment on that ground without any conditions or restrictions whatsoever. On the other hand, if, in attempting to present that objection to the court, appellant failed properly to limit his appearance and in fact appeared generally, then such general appearance would relate back and supply the place of the defective service and the personal judgment would be good and would not be subject to vacation for lack of jurisdiction. Henry v. Henry (1901) 15 S. D. 80, 87 N. W. 522. In the instant case, however, the court, after first purporting to vacate the judgment for lack of jurisdiction, proceeded to hold that the appearance of appellant when he sought vacation of the judgment was a general appearance and then proceeded to treat the matter as though the vacation of the judgment, which it had stated to be for lack of jurisdiction, was in fact sought by appellant by way of relief from inadvertant or excusable default and proceeded to fix a time wherein appellant might answer to the merits and ordered that if he failed so to do respondent might make its proof and take its judgment against him. It is difficult to determine whether this is an order vacating a judgment as void for lack of jurisdiction over the person with improper and unauthorized conditions and restrictions attached thereto, or whether it is an order refusing to vacate the judgment for lack of jurisdiction but granting the vacation thereof to permit appellant to answer which he had not done at the time of service because of inadvertance or excusable neglect. Appellant appears to have adopted the first of these alternatives. He took the view, as reasonably he might, that the order granted his application to set aside the judgment for lack of jurisdiction and to the unwarranted restrictions and conditions attached to the order he took and was allowed an exception. Under the circumstances and so far as concerns his future conduct, however, he stands in much the same situation as though the trial court had merely denied his application to vacate the judgment

for lack of jurisdiction over his person, to which order denying his application he had duly preserved an exception. Thereafter, appellant answered and went to trial on the merits, and the precise question now for consideration is whether or not by so doing, assuming that his original appearance was special and not general, he submitted himself to the jurisdiction of the court and lost the right to urge on appeal from final judgment thereafter entered the original jurisdictional question presented by his special appearance.

On this question the cases are irreconcilably conflicting. There are collected in a comprehensive annotation to the case of Mertens v. McMahon (1933) 334 Mo. 175, 66 S. W. (2d) 127, 134, 93 A. L. R. 1285, commencing at 93 A. L. R. 1302. Incidentally it may be noted in the instant case that appellant not only answered and joined issue on the merits but also moved for a change of venue, and further asked and was granted a continuance of the whole case, which action on his part might alone be sufficient to control the situation under the doctrine of the Mertens Case, wherein the court said (italics ours): "Of course, such defendant must not take any affirmative action in the case showing that he is willing to submit the trial of the whole case to the court or jury before which it is pending, *such as taking a change of venue* (Cook v. Globe Printing Co., 227 Mo. 471, 521, 127 S. W. 332), *or asking for a continuance of the whole case,* and must not seek affirmative relief on his part such as filing a counterclaim, etc. We are here discussing the question whether the mere fact of his participating in the trial of the merits on the issues raised by the answer, having objected to the jurisdiction and limited his appearance at every step and exhausted every means to keep the court within its jurisdiction over him, will be taken as conclusively showing waiver of the question of jurisdiction."

The matter is thoroughly discussed by Professor Sunderland, under the title "Preserving A Special Appearance," in 9 Mich. Law Rev. 396 (1911). Before proceeding to a consideration of the cases in the various jurisdictions, Professor Sunderland says in part as follows:

"Conceding the right of a defendant to enter a special appearance for the sole purpose of objecting to the jurisdiction of the court over his person, a most interesting and difficult question

arises when the objection is overruled. What is the defendant to do in such event? How can he preserve his special appearance for review?

"Hardly another question of practice can be found which has given rise to a more hopeless conflict of authority than this. One line of cases holds that the defendant must choose between two courses: either he must refuse to proceed further and withdraw from the case, allow judgment to go against him by default, and then attempt to have that judgment vacated on the ground of want of jurisdiction; or, abandon his special appearance entirely, appear generally and try the case on its merits. Another line of cases holds that he is forced to no such harsh choice, but may note an exception to the order overruling his objection to the jurisdiction, plead to the merits, and on appeal or error may have the benefit of his exception on the jurisdictional question, if he desires to avail himself of it. * * *

"The question is a clean cut one. Either pleading over and going to trial *is* a waiver, or *is not* a waiver, of the jurisdictional objection. Reasons may be found in support of each doctrine, and the authorities are quite evenly divided. But no question of law or practice has come under the writer's observation which has been passed upon by the courts with so little consideration as this one. One would expect just the converse to be true, in view of the great importance always attaching to jurisdictional questions. But with a few conspicuous exceptions, judicial discussions of this question are trivial and superficial. Most of the cases which pass upon the question contain no discussion whatever, even when the question is presented to the court for the first time. Often the opinions cite no authorities. Frequently they purport to rest upon cases which upon inspection are found to be not at all in point. In several states the courts have reversed themselves in the most naive manner. The loose and unsatisfactory condition of the authorities may be readily seen from the following brief outline."

It rather looks as though this court, too, had been guilty of reversing itself "in the most naive manner" and, if so, the responsibility must rest primarily upon the writer of the present opinion. The matter was first before the court in Benedict v. Johnson (1893) 4 S. D. 387, 57 N. W. 66, 68, where, without

any very lengthy discussion, it was said: "After the county court denied the motion to dismiss the action, the defendant appeared generally by counsel, and answered. The appellant contends that by the act of appearing generally in the action after the motion to dismiss was denied the defendant submitted himself to the jurisdiction of the court, and thereafter the county court of Minnehaha county had jurisdiction of the case, even admitting that the court did not acquire jurisdiction by the service of the summons. This proposition would undoubtedly be correct if no exception had been taken to the decision of the court denying the motion to dismiss. But where objection is taken to the jurisdiction of a court, and the objection is not sustained, a party is not required to abandon his case, and interpose no defense to the action, in order to preserve his rights. Lyman v. Milton, 44 Cal. 630; Deidesheimer v. Brown, 8 Cal. 339. This doctrine has often been applied in what is known as the 'Removal Cases,' where the defendant has appeared specially for the purpose of moving the transfer of a case from the state to the federal court. A denial of the motion, and an exception to the same, is all that is required of the defendant to preserve his rights to a review of the question of jurisdiction, though he thereafter appears in the case generally, and defends the same in the state court. Removal Cases, 100 U. S. 457 [25 L. Ed. 593]; Home Life Insurance Co. v. Dunn, 19 Wall 214 [22 L. Ed. 68]." The doctrine was reiterated, although the Benedict Case was distinguished and an opposite result reached on the facts, in Lower v. Wilson (1896) 9 S. D. 252, 68 N. W. 545, 62 Am. St. Rep. 865. The two California cases cited and relied upon by Judge Corson in the Benedict Case were comparatively early decisions of the California court, the Deidesheimer Case being handed down in 1857 and the Lyman Case in 1872. Before the citation of those cases in the Benedict Case in 1893, the California court had squarely reversed its position by the cases of Desmond v. Superior Court (1881) 59 Cal. 274, and Sears v. Starbird (1889) 78 Cal. 225, 20 P. 547, which cases were followed by the case of In re Clarke (1899) 125 Cal. 388, 58 P. 22, 23, wherein the California court said: "Some early cases in this state (Deidesheimer v. Brown, 8 Cal. [339], 340, and Lyman v. Milton, 44 Cal. [630] 631) seem to hold that a defendant, having first objected to the process or service by which he was brought in, may

then, if his objections are overruled, answer to the merits, and on appeal from the judgment still avail himself of his objections to the jurisdiction of the court over him. This rule seems unjust and illogical, and, I think, does not prevail elsewhere." In the quite recent case of Nelson v. Dickenson 64 S. D. 456, 268 N. W. 103, 104, this court, without mentioning either the Benedict Case or the Lower Case, announced the contrary view. We cited with approval the California case of Jardine v. Superior Court (1931) 213 Cal. 301, 2 P. (2d) 756, 79 A. L. R. 291, which reiterates the rule of the California court after the overruling of the Deidesheimer and Lyman Cases, and we said: "He has objected in the circuit court to the jurisdiction of that court over his person and the court has ruled against him. If prohibition will not lie, plaintiff must either defend on the merits in the circuit court *whereby he will waive his objection to the jurisdiction of that court over his person,* or he must stand upon such objection to the jurisdiction whereby he will be precluded from asserting, in the first instance at least, any defense he may claim upon the merits."

■ ■ We think the rule announced in Nelson v. Dickenson has the support of the better reason and should be hereafter followed by this court. After all, the function of process is, in large part at least, to give notice. Where service is attempted upon a party who is in fact amenable to the jurisdiction of the court and who actually has notice, and he pleads to the jurisdiction because the service was not made at precisely the proper place or by the proper hand, his objection is rather technical and should not be entitled to a high degree of favor in the eyes of the law. Where the party attempted to be served is a nonresident and physically without the jurisdiction of the court, the matter may be otherwise, but in those cases his plea to the jurisdiction is so palpably good that he is usually perfectly safe in relying thereon, permitting a default judgment after his special appearance, and appealing. In the instant case appellant was a resident of South Dakota, temporarily outside the boundaries of the state for his own pleasure and convenience. He actually had full and complete notice. The service of the same summons upon him just prior to his departure for Florida or immediately after his return would have conferred full and unquestioned jurisdiction. It seems neither harsh nor unreasonable to say that if he desired to rely on the

defective service he should make his objection and stand upon it and thereafter stay out of court for all other purposes.

"Pleas based upon lack of jurisdiction of the person are in their nature pleas in abatement, and find no especial favor in the law. They amount to no more than the declaration of the defendant that he has had actual notice, is actually in court in a proper action, but, for informality in the service of process, is not legally before the court. It is purely a dilatory plea; and, when a defendant seeks to avail himself of it, he must, for very obvious reasons, stand upon his naked legal right, and seek nothing further from the court than the enforcement of that right. He will not be heard to ask of the court anything further than an adjudication upon his plea, and if he does ask anything further, then, by logic of the fact, he must necessarily have waived the irregularity of his summons before the court. Here is one reason for the well-settled rule that, if a defendant wishes to insist upon the objection that he is not in court for want of jurisdiction over his person, he must specially appear for that purpose only, and must keep out for all purposes except to make that objection. Another reason, equally valid, is that if such defendant shall ask for any relief other than that addressed to his plea, he is seeking to gain an unconscionable advantage over his adversary, whereby, if the determination of the court be in his favor, he may avail himself of it, while, if it be against him, he may fall back upon his plea of lack of jurisdiction of the person." Olcese v. Justice's Court, (1909) 156 Cal. 82, 103 P. 317, 318.

"No valid or sufficient reason can be advanced to show why a voluntary appearance, and pleading to the merits, should not be held a waiver of all objections to the manner in which the defendant is brought into court. After such plea is interposed, the justice either has or has not jurisdiction over the person of the defendant. If he has not, he has no authority to proceed in the trial, or render a valid judgment. The question does not depend upon the event of the trial. When the defendant joins issue upon the merits, and takes the chances of a trial, he is not in a position to say, if the result is favorable to him, that the court *has* jurisdiction to render a judgment in his favor, but, if it results unfavorably, the court *has no* jurisdiction to render judgment against him.

"Inasmuch as parties can confer jurisdiction upon the court by a voluntary appearance (section 6823, How. St.), there appears to be no good reason why a defendant may not confer such jurisdiction after an irregular or void service of process upon him by a voluntary appearance in the cause. If he does so before objections are taken, they come too late; and, if after they are taken, he waives them by submitting to the jurisdiction, and pleading to the merits. He cannot rely upon both, because that would allow him to occupy inconsistent positions, wherein he could claim that the proceedings were valid or void, as the result of the trial upon the merits affected his interests." Dailey v. Kennedy (1887) 64 Mich. 208, 31 N. W. 125.

Perhaps, however, we need not further discuss that question here. Even if this court were still willing to adhere to the rule originally announced in Benedict v. Johnson, nevertheless the circumstances of the instant case do not require or justify the application of that rule. The rule arose solely because of the fact that an order refusing to vacate service of summons upon special appearance prior to judgment is an interlocutory, nonappealable order. Ryan v. Davenport (1894) 5 S. D. 203, 58 N. W. 568; Nelson v. Dickenson, supra. It should not be applied to any other situation. Cf. Irwin v. Keokuk Sav. Bank & Trust Co. (1934) 218 Iowa, 470, 254 N. W. 806. As stated by Professor Sunderland: "The difficulty at the bottom of this conflict in the cases arises from the fact that an order overruling a special appearance is not a final order and is not appealable. No review of the order can be had directly. Consequently there is no way to obtain it other than on appeal from the final judgment." The courts which adhere to the rule originally stated by this court in Benedict v. Johnson take the view that a defendant whose objection to jurisdiction over his person upon special appearance has been overruled prior to judgment is in a sense under compulsion to come in and defend on the merits, else he is put to the choice of resting his whole case on the question of lack of jurisdiction or of being deprived of such defense on the merits as he may have. Appellant here was not so circumstanced. Judgment had already been rendered against him. Then by order after judgment the court had granted his motion to vacate the judgment for lack of jurisdiction but had attached conditions and restrictions which appellant main-

tained were unauthorized and improper and to that portion of the order he had taken his exception. Appellant was under no conceivable sort of compulsion to comply with the conditions to which he objected. The order being made after judgment was directly appealable to this court. Crisp v. Gochnour (1914) 34 S. D, 364, 148 N. W. 624; Chicago, M. & St. P. Rly. v. McClelland (1917) 39 S. D. 191, 163 N. W. 675. Appellant could lose nothing by taking the appeal. If the portion of the order to which he objected was reversed on appeal, then his position would be fully sustained. If it were affirmed on appeal, then he could still, if he so desired, answer to the merits and proceed in the court below. Appellant did not see fit, however, to question by appeal, as he might perfectly well have done, the portion of the order to which he objected, but elected to comply therewith and to answer to the merits. When he did that, under the circumstances here presented, we think his appearance was both general and voluntary and that by such appearance he must be deemed to have lost the benefit of the objection he had previously attempted to jurisdiction over his person. Appellant therefore cannot prevail in this court on the present appeal upon the ground that service upon him in the state of Florida conferred no jurisdiction upon the circuit court. Conceding defective service, and assuming a valid special appearance in objection thereto, nevertheless he himself conferred that jurisdiction by his subsequent voluntary general appearance.

 By some fifty-eight other assignments of error appellant urges that the findings of fact fail to support the conclusions of law and judgment; that the evidence is insufficient to support the findings of fact; and that the trial court erred in its rulings upon the admission and exclusion of diver's items of evidence. We are of the opinion that the findings amply support the conclusions and judgment. As we have previously pointed out herein, we are of the view that none of the other assignments are open to appellant upon this record, which must stand as an appeal from the judgment only upon the judgment roll. Doubtless this opinion should end at this point. The circumstances of the case are somewhat unusual, however. Appellant of course argued all assignments in his brief. So likewise did plaintiff-respondent Union Bond & Mortgage Company (see Per Curiam opinion, same title, this day filed 64 S. D. 596, 269 N. W. 472). The motion of

Union Bond & Mortgage Company for dismissal of the appeal in so far as the same purported to be an appeal from the denial of a new trial was not orally argued, but was submitted upon the moving papers and appellant's papers in resistance thereto. Although this motion had in fact been submitted and was pending before this court when the cause was reached on our calendar for oral argument on the merits, nevertheless such motion had not been at all considered by the court. Consequently, the court permitted and heard full oral argument upon all assignments by counsel for both appellant and Union Bond & Mortgage Company. In conference upon the case after oral argument the merits were fully discussed and considered by the court before bringing up for consideration the previously submitted motion of Union Bond & Mortgage Company for partial dismissal of the appeal. Under these somewhat unusual circumstances, perhaps it may not be amiss to say (obiter though it is) that the judges were unanimously of the view that the evidence sufficiently supports the findings, and that if there were any errors in rulings upon evidence they were not prejudicial to the rights of appellant.

The judgment appealed from is affirmed.

All the Judges concur, excepting POLLEY, P. J., who is absent and not sitting.