1997 SD 43

**Richard JULSON and Doris Julson, and Viking Industries, Inc., a South Dakota corporation, Plaintiffs and Appellants,**

v.

**FEDERATED MUTUAL INSURANCE COMPANY, Defendant and Appellee.**

**No. 19470.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 12, 1996.

Decided April 16, 1997.

Rehearing Denied May 15, 1997.

---

Peter Sommervold of Woods, Fuller, Shultz & Smith, Sioux Falls, for plaintiffs and appellants.

Charles M. Thompson of May, Adam, Gerdes & Thompson, Pierre, for defendant and appellee.

AMUNDSON, Justice.

[¶ 1.] Richard and Doris Julson, and Viking Industries, Inc. (Julsons), appeal from a decision of the trial court granting summary judgment to Federated Mutual Insurance Co. (Federated) on Julsons' claim for breach of the duty of good faith and fair dealing. We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] Julsons formed and incorporated Viking Industries, Inc., a van conversion business located in Flandreau, South Dakota. On December 23, 1988, the primary manufacturing facility burned to the ground. Julsons were insured by Federated, with a policy limit of $293,000.00 for the building loss and $80,000.00 for the building's content loss. At the time of the loss, the reasonable market values of the building and its contents were

$343,637.04 and $354,060.41, respectively. In addition, vehicles destroyed by the fire, less salvage value, amounted to $265,382.17, all of which Federated paid. The total value of the property destroyed by the fire was $964,114.37. Federated paid its full policy limits, totaling $639,316.92. Thus, Julsons claim to have suffered a net loss of $324,797.45 before their eventual settlement with the third-party tortfeasor.

[¶ 3.] Following an investigation regarding the cause of the fire, Federated notified Julsons of its intention to assert its contractual subrogation rights against several third-party tortfeasors, to which Julsons did not object. Next, Federated commenced a lawsuit against the third-party tortfeasors, Minnegasco, et al. (*Viking Indus., Inc. v. Minnegasco,* Civ. 91–95 (SD 1994)). Then Julsons, assisted by their attorneys, joined in the lawsuit to pursue their right to recover total damages. Before trial, Federated settled the subrogation claim for an undisclosed amount. The settlement agreement expressly provided that Julsons could continue their lawsuit against the tortfeasors to collect their total claimed loss. Prior to settlement, Federated paid all of the litigation costs for both itself and Julsons. Julsons eventually settled with the tortfeasors for $202,333.00, thereby avoiding litigation costs of their own.

[¶ 4.] Julsons sued Federated, claiming bad faith in that Federated breached its duty of good faith and fair dealing when it settled with the tortfeasors prior to Julsons being made whole, thereby willfully disregarding the rights of Julsons. After discovery, Federated moved for summary judgment. A hearing was held on the summary judgment motion and the trial court granted the motion. Julsons then filed a motion for reconsideration, which was denied. The grant of summary judgment is appealed by Julsons and they raise the following issues:

I.    Does a genuine issue of material fact exist as to Julsons' claim that Federated committed bad faith?

II.   Are Julsons entitled to be made whole before a subrogation interest arises in favor of the insurer?

## STANDARD OF REVIEW

[¶ 5.] The standard of review for the grant or denial of a summary judgment motion in lawsuits involving tort claims was stated in *Ford v. Moore:*

> Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon,* 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin,* 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

1996 SD 112, ¶ 7, 552 N.W.2d 850, 852 (involving the purported negligence of an attorney in failing to bring a timely federal tort claim); *see also VerBouwens v. Hamm Wood Prods.,* 334 N.W.2d 874, 876 (S.D.1983) (pertaining to an intentional tort claim).

## DECISION

[¶ 6.] In *Walz v. Fireman's Fund Ins. Co.,* we reiterated the test to be met in a bad faith cause of action against an insurer:

> "[F]or proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] *and* the knowledge or reckless disregard [of the lack] of a reasonable basis for denial, implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.

Under these tests of the tort of bad faith, an insurance company, however, may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." 1996 SD 135, ¶ 7, 556 N.W.2d 68, 70 (quoting *Champion v. United States Fidelity & Guar. Co.*, 399 N.W.2d 320, 324 (S.D.1987)) (other citations and quotations omitted) (emphasis in original). Furthermore, "[t]he issue is determined based upon the facts and law available to Insurer at the time it made the decision to deny coverage." *Id.* at ¶ 8, 556 N.W.2d at 70.

■ [¶ 7.] Julsons fail to meet the first prong. There is no proof of "absence of a reasonable basis for denial of policy benefits[,]" because Federated paid in good faith all resulting claims to the full policy limits. *Id.* at ¶ 7, 556 N.W.2d at 70. Moreover, Julsons fail to demonstrate Federated's "knowledge or reckless disregard [of the lack] of a reasonable basis for denial[.]" *Id.* In other words, there is no evidence in the record that Federated consciously disregarded Julsons' rights under the insurance contract. Federated simply sought retribution from the third-party tortfeasors via settlement. While we stated in *Kunkel v. United Sec. Ins. Co. of N.J.* that an "insured's interests must be considered[,]" evidence exists that Julsons' interests were considered in this case. 84 S.D. 116, 122, 168 N.W.2d 723, 726 (1969) (involving a bad faith failure to settle cause of action). Federated not only informed Julsons of its intention to settle, but it also ensured that Julsons' ability to seek damages from the tortfeasors was not affected by the settlement by specifically providing such a provision in the agreement.

■ [¶ 8.] In addition, according to *Walz*, we look to the law available to Federated at the time of the alleged wrong. 1996 SD 135, at ¶ 8, 556 N.W.2d at 70. Federated possessed a contract of insurance which allowed it to subrogate after making full payment to Julsons. "[S]ubrogation is an equitable doctrine and depends upon a just resolution of a dispute under a particular set of facts." *Vogt v. Schroeder*, 129 Wis.2d 3, 383 N.W.2d 876, 879 (1986); *see also International Serv. Ins.*

*Co. v. Home Ins. Co.*, 276 F.Supp. 632, 633 (W.D.Okla.1967) (quoting *Boyd v. McKenney*, 118 Okla. 8, 246 P. 406 (1926)); 6A Appleman, *Insurance Law and Practice*, § 4051, at 110 (1972). It is clear that under the specific facts in this case Julsons have not shown a course of action by Federated that violated any of the duties imposed by the insurance contract which would constitute a basis for this tort action. In fact, as stated previously, the settlement agreement expressly provides that Julsons may continue their portion of the lawsuit against the tortfeasors in any manner they desire. Julsons simply decided to settle rather than incur the costs of litigation.

■ [¶ 9.] Julsons assert that under common law subrogation does not arise until the insured is made whole, citing *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis.2d 263, 316 N.W.2d 348 (1982), and *Garrity v. Rural Mut. Ins. Co.*, 77 Wis.2d 537, 253 N.W.2d 512 (1977). However, the facts in these cases are distinguishable from the facts at hand. As stated in *Vogt*, "[I]n both *Garrity* and *Rimes* the Court knew from the record that the funds available were insufficient to satisfy the damages of the injured party—*i.e.*, to make him whole[.]" 383 N.W.2d at 880. On this basis, the Wisconsin Supreme Court refused, "in equity, to allow the insurer to take, in subrogation, funds from the tortfeasor that would, in the absence of subrogation, have gone toward the satisfaction of insured's damages." *Id.* On the other hand, in the case before us, the pool of funds awarded from the third-party tortfeasors was not shown to be inadequate to make all parties whole. Julsons have not established that they could not be made whole by pursuing their reserved claims against the third-party tortfeasors. In fact, no evidence is in this record to the contrary.

[¶ 10.] In *Winkelmann v. Excelsior Ins. Co.*, the Court of Appeals of New York addressed a similar issue: whether an "insurer, who has fully satisfied its policy obligations," is precluded from "pursuing its subrogation claim against the third-party tortfeasor before its insured has done so." 85 N.Y.2d 577, 626 N.Y.S.2d 994, 997, 650 N.E.2d 841, 844 (1995). Noting the existence of the argu-

ment that insurer does not possess a right to subrogation until the insured is made whole, the court held:

> The rule is based upon the nature of the relationship between the insurer and the insured—if the loss of one of the two must go unsatisfied, it should be the insurer who has been paid to assume the risk of loss. The cited decisions [regarding an insured being made whole] do not stand for the proposition, nor has our attention been called to any case which does, that the equitable subrogee must delay seeking recovery from the tortfeasor until the insured has exhausted its efforts to collect from the third-party tortfeasor.

*Id.* at 998, 650 N.E.2d at 845 (citations omitted).

[¶ 11.] Likewise, Julsons fail to cite authority stating that the subrogating party has a duty to continue a cause of action against a tortfeasor rather than settle the claim. We are reminded that the "[f]ailure to cite authority violates SDCL 15–26A–60(6) and constitutes a waiver of that issue." *State v. Phillips*, 489 N.W.2d 613, 616 (S.D.1992). In addition, Julsons admit that once Federated was entitled to subrogate, it could "do whatever [it] want[ed]." As we have stated previously, "[a] party may not claim a better version of the facts than his prior testimony." *Fenner v. Trimac Transp., Inc.*, 1996 SD 121, ¶ 14, 554 N.W.2d 485, 489.

[¶ 12.] Federated's contract of insurance specifically provides for Federated's right to subrogation after making full payment to Julsons as required by its contract. It is undisputed that there is no statement in the policy requiring Julsons to be made whole before subrogation may arise or at the time any settlement is made with any third-party tortfeasors. Thus, there is no question of material fact surrounding the policy language, and the terms are construed according to their plain and ordinary meaning. *American Family Mut. Ins. Co. v. Elliot*, 523 N.W.2d 100, 102–03 (S.D.1994). The plain language of the policy permits Federated to subrogate, file an action, and settle it after making full payment to Julsons. *See Johnson v. Rapid City Softball Ass'n*, 514 N.W.2d 693, 697–98 (S.D.1994) (stating summary judgment is proper when there is no dispute

as to the language of the contract as well as its execution); *Sunshine Ins. Co. v. Sprung*, 452 N.W.2d 782, 785 (S.D.1990) (holding there was no err in granting summary judgment because the plain language of the policy excluded the coverage at issue).

[¶ 13.] The prejudice Julsons claim is that they were financially unable to continue the underwriting of the lawsuit after Federated settled its part of the case. However, Federated is not obligated to pay the entire cost incurred from such litigation. *See generally* 16 Couch on Insurance § 61:47, at 128 (1983); Robert E. Keeton & Alan I. Widiss, *Insurance Law* § 3.10(b)(3), at 238–39 (1988). Moreover, Julsons' insurance policy provides that expenses necessary to the recovery of any amounts from the third-party tortfeasors under a subrogation claim would be apportioned between the interests concerned.

[¶ 14.] The trial court found there was no genuine issue of material fact as to the bad-faith claim against Federated. This ruling was based on the finding that no prejudice was sustained by Julsons because Federated settled the lawsuit with the third-party tortfeasors. As stated in *Ford*, there are "no genuine issues of material fact and the legal questions have been correctly decided." 1996 SD 112, at ¶ 7, 552 N.W.2d at 852. In other words, there is a sound basis which supports the trial court's decision to grant summary judgment, because the parties agree that Federated paid Julsons' resulting claims to the full policy limits, and that Federated's settlement with the third-party tortfeasors did not prevent Julsons from continuing their action against the third-party tortfeasors seeking to recover their total loss. The trial court's granting a summary judgment in favor of Federated on a bad-faith cause of action is affirmed. Based on this holding, the other issues raised by Julsons need not be reached.

[¶ 15.] Affirmed.

[¶ 16.] MILLER, C.J., and SABERS, KONENKAMP, and GILBERTSON, JJ., concur.