#23854-rev-MYREN, Circuit Judge
**2006 SD 62**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MET LIFE AUTO AND HOME
INSURANCE COMPANY,                          Appellant,

    v.

GREGORY C. LESTER,                          Plaintiff and Appellee,

    and

LUKE WETER,                                 Defendant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JEFF W. DAVIS
Judge

\* \* \* \*

ANTHONY P. BOLSON of
Beardsley, Jensen & Von Wald
Rapid City, South Dakota                    Attorneys for appellant.

GEORGE BEAL of
Beal Law Office                             Attorneys for plaintiff
Rapid City, South Dakota                    and appellee Lester.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2006

OPINION FILED 7/12/06

#23854

MYREN, Circuit Judge

[¶1.]        Met Life Auto and Home Insurance Company (Met Life) appeals a judgment that denied subrogation.  We reverse.

FACTS

[¶2.]        On April 20, 2004, Luke Weter (Weter) backed his car into a brick wall owned by Gregory Lester (Lester).  Weter was insured by USAA Casualty Insurance Company (USAA).  Lester had a homeowner's property insurance policy with Met Life.

[¶3.]        Lester sought compensation from Weter's insurer, USAA.  While negotiating with USAA, Lester filed a claim with Met Life.  Met Life sent an adjuster who estimated that the damage could be repaired for $3,685.18.  Met Life subtracted Lester's $1000 deductible and issued him a check for $2,685.18.  On December 20, 2004, Met Life sent a "1st Notice of Claim" to USAA requesting $2,685.18.

[¶4.]        Lester believed his damages were greater than those paid by Met Life. He filed an action in small claims court against Weter and his insurer, USAA. Weter removed the action to circuit court.  After a settlement conference, Weter and USAA agreed to settle Lester's claim for a total payment of $9,000.  Because USAA had received notice of claim for subrogation from Met Life, the settlement was structured to address that subrogation claim.  USAA agreed to deposit the amount of the subrogation claim ($2,685.18) with the clerk of courts to be held for distribution as ordered by the court.  The remaining $6,314.82 was paid directly to Lester.  The circuit court reviewed the settlement agreement and entered a judgment and order approving settlement and deposit with the clerk.  This

judgment and order specifically required Lester's attorney to serve notice of the deposit upon Met Life. Lester's attorney provided that notice and Met Life filed its objections. Met Life asserted that the circuit court did not have jurisdiction over it because it was not a named party, but then requested the court disburse the entire amount of the deposit to it. Lester responded by arguing that the funds had been deposited with the court under SDCL 15-6-67 and SDCL ch 21-43 and suggested that Met Life should move to intervene if it had concerns over not being a named party.

[¶5.] On July 11, 2005, Weter was dismissed from the proceeding. Notice of entry of that order was entered on July 13, 2005. No appeal of that order has been filed. Weter is not participating in this appeal.

[¶6.] On July 11, 2005, the circuit court conducted a motion hearing in which Lester and Met Life both participated through their attorneys. Met Life's attorney made the first argument of the day. He squarely addressed the substantive issue of subrogation. He did not claim that the court had no jurisdiction over Met Life. In his responsive argument, Lester's attorney noted that Met Life earlier claimed lack of jurisdiction. The circuit court suggested that the parties agree to the jurisdiction of the court so that the merits could be addressed and the matter resolved. Both parties agreed and no further argument regarding jurisdiction was made to the court.

[¶7.] After listening to the positions of both parties, the circuit court ruled from the bench explaining that this Court's ruling in Westfield Ins. Co. v. Rowe, 2001 SD 87, 631 NW2d 175, requires a review of the specific contractual or policy

language to determine the intent of the parties. The circuit court concluded that Met Life's policy language fell short of excluding application of the made whole doctrine. The circuit court noted that Lester's claim for damage significantly exceeded the amount paid by Met Life. That significant claim was accepted and paid by USAA, Weter's insurer.

[¶8.] Lester submitted a proposed decision. Met Life filed objections. On August 24, 2005, the circuit court signed a decision essentially identical to the proposed decision. On that same day, the circuit court also entered a judgment effectuating the decision. Lester provided Met Life with notice of entry of the judgment on August 25, 2005. Met Life filed a notice of appeal on October 20, 2005.

ISSUE ONE

[¶9.] **Did the circuit court have personal jurisdiction over Met Life?**

[¶10.] At the hearing on July 11, 2005, the circuit court suggested that the parties agree to submit to the jurisdiction of the court so that the matter could be resolved. Met Life agreed and made no further arguments about lack of jurisdiction until after the court ruled that the $2,685.18 belonged to Lester.

[¶11.] The circuit court clearly had subject matter jurisdiction under SDCL 15-6-67 and SDCL ch 21-43. A person may waive a lack of personal jurisdiction by submitting to the jurisdiction of the court and pleading on the merits. In re Estate of Green, 516 NW2d 326 (SD 1994); Union Bond & Mort. Co v. Brown, 64 SD 600, 269 NW 474 (1936). That is what occurred during the July 11, 2005, hearing. Met Life will not be heard now to reassert a lack of personal jurisdiction after having agreed to submit to the court's jurisdiction.

ISSUE TWO

**[¶12.]** **Did the circuit court correctly interpret the subrogation language of Met Life's policy with Lester?**

**[¶13.]** The right to subrogation is not new in South Dakota. A half century ago, this Court stated: "It is a well settled rule of law that an insurer is entitled to subrogation, either by contract or in equity for the amount of the indemnity paid." Parker v. Hardy, 73 SD 247, 248, 41 NW2d 555, 556 (1950). Though frequently repeated, that sentence is seldom parsed. Subrogation can arise out of two sources. First, the parties can agree to create a contractual right of subrogation. This is commonly done in insurance policies. Second, equity can require the creation of subrogation based upon the circumstances, even without a contractual obligation.[*]

**[¶14.]** In Julson v. Federated Mut. Ins. Co., 1997 SD 43, ¶12, 562 NW2d 117, 121 this Court implicitly addressed this distinction between equitable subrogation and contractual subrogation with the following language:

> Federated's contract of insurance specifically provides for Federated's right to subrogation after making full payment to Julsons as required by its contract. It is undisputed that there is no statement in the policy requiring Julsons to be made whole before subrogation may arise or at the time any settlement is made with any third-party tortfeasors. Thus, there is no question of material fact surrounding the policy language, and the terms are construed according to their plain and ordinary meaning. American Family Mut. Ins. Co. v. Elliot, 523 NW2d 100, 102-03 (SD 1994). The plain language of the

---

[*] For a good example of subrogation created by equity, *see* Application of Mach, 71 SD 460, 465, 25 NW2d 881, 883 (1947)("Subrogation has been defined by this court as the mode which equity adopts to compel the ultimate discharge of the debt by him who, in good conscience, ought to pay it, and to relieve him whom none but the creditor could ask to pay. The right is not dependent upon an agreement, but rests upon principles of natural justice and equity.") *See also*, Buhl v. McDowell, 60 SD 22, 242 NW 638 (1932).

policy permits Federated to subrogate, file an action, and settle it after making full payment to Julsons.

[¶15.]    In short, the language of the *Julson* insurance policy created a contractual right to subrogation.  The nature of the subrogation was governed by the terms of that policy.  There was no need to apply the principles of equitable subrogation.

[¶16.]    This Court continued that line of analysis in *Westfield*, 2001 SD 87 at ¶15, 631 NW2d at 180:

> We recognized in Julson v. Federated Mut. Ins. Co., 1997 SD 43, ¶12, 562 NW2d 117, 121, that subrogation rights may arise independent of the common law "made whole" doctrine. In *Julson*, the insurance policy specifically provided the right of subrogation, without any requirement that the insured be made whole. *Id.* Likewise, Westfield's policy provides:
>
>> If we make a payment under this policy and:
>>
>>> a.  The person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right
>>>
>>> . . .
>>>
>>> b.  The person to or for whom payment is made recovers damages from another, that person shall: (1) hold in trust for us the proceeds of the recovery and (2) reimburse us to the extent of our payment.
>
> Rowe can point to no language in the policy or statutory authority which restricts this right of subrogation to instances where the insured has been made whole. Therefore, Westfield is entitled to reimbursement of the $144,660.69 it paid to Rowe.

[¶17.] Similarly, subrogation in this case is created and controlled by the language of the insurance policy between Lester and Met Life. Met Life's subrogation clause in Lester's policy read as follows:

> You must do everything you can to preserve your rights of recovery. When we have paid you for your damage or injury, your right to recover from others who caused the damage or injury will belong to us up to the amount we have paid you for the damage or injury, so don't sign any release without our permission.

[¶18.] The circuit court concluded that this language did not create a right to subrogate in Met Life. This Court conducts a de novo review of the interpretation of contractual language. Gloe v. Union Ins. Co, 2005 SD 30, 694 NW2d 252; Sawyer v. Farm Mut. Ins. Co., 2000 SD 144, 619 NW2d 644. Although the language in Met Life's policy is less legalistic than that in *Westfield*, it clearly and unequivocally creates a right to subrogation. As in *Westfield*, Lester can "point to no language in the policy or statutory authority which restricts this right of subrogation to instances where the insured has been made whole." 2001 SD 87 at ¶15, 631 NW2d at 180. The language of Lester's insurance policy clearly establishes contractual subrogation and controls the nature and terms of that subrogation.

[¶19.] This is not a case of equitable subrogation. "A court of equity is not at liberty to disregard the contract of the parties in this respect where deliberately made and clearly expressed, for equity follows the law and will neither make a new contract for the parties nor violate that into which they have freely and advisedly entered." Heikkila v. Carver, 378 NW2d 214, 219 (SD 1985) (quoting Jesz v. Geigle, 319 NW2d 481, 483 (ND 1982)). The contract requires that Lester reimburse Met Life for the $2,685.18 it advanced to him.

[¶20.] Neither party to this action has requested that we reverse our rulings in *Julson* and *Westfield*. We are well aware of the public policy arguments advanced in Westfield Insurance Company, Inc. v. Rowe: The South Dakota Supreme Court Rejects the Common Law Made Whole Doctrine on a Property Insurance Subrogation Claim, 47 SDLRev 316 (2002). Any significant alteration in the law of contractual subrogation as suggested in that article would be within the province of the South Dakota Legislature. The South Dakota Legislature has not done so in the years since *Julson* and *Westfield* were decided and that article was published.

[¶21.] The circuit court is reversed and directed to enter a judgment requiring Lester to pay $2,685.18 to Met Life.

[¶22.] GILBERTSON, Chief Justice and KONENKAMP and ZINTER, Justices, concur.

[¶23.] MEIERHENRY, Justice, concurs in part and dissents in part.

[¶24.] MYREN, Circuit Judge, for SABERS, Justice, disqualified.

MEIERHENRY, Justice (concurring in part and dissenting in part).

[¶25.] I agree that Met Life waived the issue of personal jurisdiction. I disagree, however, that the circuit court erred when it denied subrogation.

[¶26.] As we have stated, "[i]t is a well settled rule of law that an insurer is entitled to subrogation, either by contract or in equity for the amount of the indemnity paid." Parker v. Hardy, 73 SD 247, 248, 41 NW2d 555, 556 (1950). Even though subrogation may be provided by contract, the concept of subrogation originated in equity. We have explained, "'[s]ubrogation is an equitable doctrine

and depends upon a just resolution of a dispute under a particular set of facts.'"

Julson v. Federated Mut. Ins. Co., 1997 SD 43, ¶8, 562 NW2d 117, 120 (citation

omitted). Therefore, even if an insured's right of subrogation arises from contract,

we cannot ignore the equitable origin of that right.

[¶27.]    Because of its origin in equity, subrogation is subject to the principles

of equity. As the Nebraska Supreme Court explained:

> It is well established that in the absence of an express
> provision to the contrary, an insurance policy reaffirms
> the rights of parties relative to subrogation but *does not
> alter the fundamental principles pertaining to
> subrogation.* Therefore, if a contractual right of
> subrogation is merely the usual equitable right which
> would have existed in any event in the absence of a
> contract, equitable principles control subrogation.

Cont'l W. Ins. Co. v. Swartzendruber, 253 Neb 365, 370, 570 NW2d 708, 711 (1997)

(citations omitted) (emphasis added). One principle to which subrogation is subject

is the "made whole" doctrine, which states that an insured's right to subrogation

arises *only* when the insured receives compensation for all of the loss it incurred.

*See id.* at 371, 570 NW2d at 712 ("Under principles of equity, an insurer is entitled

to subrogation only when the insured has received, or would receive, a double

payment by virtue of an insured's recovering payment of all or part of those same

damages from the tort-feasor."). Therefore, a subrogation clause in an insurance

contract does not necessarily preclude application of the "made whole" doctrine.

[¶28.]    Our cases, however, have not recognized these generally accepted

principles of equity. *See* Westfield Ins. Co. v. Rowe, 2001 SD 87, 631 NW2d 175;

*Julson*, 1997 SD 43, 562 NW2d at 117. In fact, a prominent insurance law

commentator deemed our decision in *Julson* "authority to the contrary" of the

general rule that an insurer is entitled to subrogation only after an insured has been made whole. 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 223:134 (3d ed 2000). Both *Westfield* and *Julson* refused to invoke the "made whole" doctrine because no contractual provision required that the insured be made whole before the insurer sought subrogation. For example, the provision at issue in *Westfield* stated:

> "If we make a payment under this policy and:
> a. The person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right ...
> b. The person to or for whom payment is made recovers damages from another, that person shall: (1) hold in trust for us the proceeds of the recovery and (2) reimburse us to the extent of our payment."

2001 SD 87, ¶15, 631 NW2d at 180. The Court concluded that because the insured could "point to no language in the policy or statutory authority which restricts this right of subrogation to instances where the insured has been made whole," subrogation was appropriate. *Id.*

[¶29.]     This case, however, presents a situation ripe for application of the "made whole" rule. The contract provision at issue here merely restates the equitable principle of subrogation; it benefits neither the insurer nor the insured. As Met Life stresses, the provision does not condition its right to subrogation on the insureds being made whole. *Cf. Julson*, 1997 SD 43, ¶12, 562 NW2d at 121 ("It is undisputed that there is no statement in the policy requiring [insureds] to be made whole before subrogation may arise"). On the other hand, neither does the provision give Met Life's subrogation right priority over Lester regarding damages recovered from Weter. There is no language requiring payments to be "held in

trust," and there is no language precluding the application of the "made whole" doctrine.

[¶30.]     Because the contract provision does not unambiguously abrogate the doctrine, the generally accepted, based-in-equity "made whole" doctrine should apply.  Therefore, in the absence of an express limitation, the circuit court correctly concluded that the provision "is a little short."  The "made whole" doctrine precludes Met Life from seeking subrogation until Lester has received full compensation for his damages.

[¶31.]     The "made whole" doctrine is based on the theory that "where the sum recovered by the insured from the tortfeasor is less than the total loss and thus, either the insured or the insurer must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume."  DeTienne Assocs. Ltd. P'ship. v. Farmers Union Mut Ins. Co., 266 Mont 184, 190, 879 P2d 704, 708 (1994); *see also Julson*, 1997 SD 43, ¶10, 562 NW2d at 121 (quoting a New York Court of Appeals case stated that "[t]he ['made whole'] rule is based upon the nature of the relationship between the insurer and the insured—if the loss of one of the two must go unsatisfied, it should be the insurer who has been paid to assume the risk of loss.").  This logic is especially relevant here, in light of our well-settled rule of liberal construction in favor of the insured.  *See* Culhane v. W. Nat'l. Mut. Ins. Co., 2005 SD 97, ¶19, 704 NW2d 287, 293.  Because the contract is silent regarding the "made whole" doctrine, we should construe it in favor of Lester.  The majority's decision does the opposite.

[¶32.]    More important, in the absence of a subrogation clause, this Court would undoubtedly allow an insurer to subrogate based on the equitable principles of subrogation.  In the absence of specific language to the contrary, the insured should also be allowed to invoke the equitable principles of subrogation—in this case, the "made whole" doctrine.  The principle of fairness inherent in equity should run to both the insurer and the insured.

[¶33.]    For these reasons, I would affirm the trial court.