Al J. SCHECHTER, Plaintiff-Appellant and Cross-Appellee,

v.

S. S. KRESGE COMPANY, d/b/a K–Mart, K–Mart Enterprises of Colorado, Inc., Sherwin-Williams Company, d/b/a Acme Quality Paints, Inc., James C. Crocker and Bruce Spence, Defendants-Appellees and Cross-Appellants.

Nos. 76–2021, 76–2074.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 14, 1978.

Decided July 28, 1978.

Robert S. Treece, Denver, Colo. (Peter F. Jones, Yegge, Hall & Evans, Denver, Colo., on the brief), for plaintiff-appellant and cross-appellee.

Michael A. Williams, Denver, Colo. (Craig A. Christensen, Larry R. Martinez, and Deanna E. Hickman, of Dawson, Nagel, Sherman & Howard, Denver, Colo., on the brief), for defendants-appellees and cross-appellants.

Before SETH, Chief Judge, and McWILLIAMS and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a diversity case arising out of a fire which caused extensive damage to a K–Mart store in Englewood, Colorado. The controversy is between Al J. Schechter, the owner of the store premises, and S. S. Kresge Company, doing business as K–Mart, which leased the store premises from Schechter. It is agreed that the fire was started by an arsonist. The sprinkling system was activated and the local fire department responded. It is also undisputed that an employee of K–Mart, believing that the fire had been extinguished, turned off the sprinkling system in order to prevent further damage to store merchandise. In fact the fire was not out, and, with the sprinkling system shut down, the fire flared up and caused considerable additional damage before it was brought under control.

Schechter, the landlord, brought the present action against K–Mart, the tenant, claiming that his store building was damaged because of the conduct of K–Mart's

employee. Specifically, it was alleged that the fire damage resulted from the conduct of K–Mart's employee which constituted, in the alternative, negligence, gross negligence, and wilful and wanton misconduct. The particular conduct relied on was the act of K–Mart's employee in shutting down the sprinkling system before the fire was out. In this regard it was further alleged that in thus shutting down the sprinkling system the K–Mart employee violated a local municipal ordinance relating to sprinkling systems.

K–Mart by answer denied all allegations of negligence or other misconduct by its employee and affirmatively alleged that under the express terms of the lease between Schechter and K–Mart, Schechter was barred from any recovery.

Since the lease is at the heart of the present controversy, reference thereto will be made at this point. Under the terms of the lease, Schechter, the landlord, agreed to insure the leased building against damage or destruction by fire.* That particular provision in the lease, paragraph 19, provides as follows:

> From and after the date on which Tenant [Kresge] shall be privileged to enter upon demised premises for the purposes specified in Article 8 hereof, Landlord [Schechter] shall insure the buildings depicted on Exhibit "B", including Tenant's buildings, against damage or destruction by fire and other casualties insured under a standard extended coverage endorsement.

A so-called "redelivery" clause in the lease reads as follows:

> At the expiration or earlier termination of the lease term, Tenant shall surrender demised premises, together with alterations, additions and improvements then a part thereof, in good order and condition except for the following: ordinary wear and tear, repairs required to be made by Landlord, and loss or damage by fire, the elements and other casualty or occurrence excepted.

The lease in paragraph 19 also provides as follows:

> Irrespective of the cause thereof, Tenant shall not be liable for any loss or damage to said buildings resulting from fire, explosion or any other casualty.

The trial of this case was to a jury and was a protracted one. There was much testimony relating to the sprinkling system, the effect of the shutting down of the system by the K–Mart employee, and what would have been the damage had the system not been shut down prematurely. As Schechter asserts in his brief, it was his theory of the case that K–Mart, through its employees, first "set-up" the premises for a fire by its placing and storing of flammable objects, and then "shut down" the sprinkling system before the fire had been put out.

The case was submitted to the jury under special interrogatories. The jury found that K–Mart had acted in a negligent manner, but that such negligence was neither wilful or wanton. The jury further fixed Schechter's damage at $1,126,406. Based on the foregoing answers to interrogatories, the trial judge entered judgment for K–Mart, the defendant. The trial judge reasoned that under local Colorado law the lease provisions excused K–Mart from liability for damage resulting from any negligent acts of its employees. The trial judge was apparently of the view that had K–Mart been guilty of wilful and wanton misconduct, as opposed to mere negligence, then the lease provisions would not have excused K–Mart from liability. In any event, the trial judge entered judgment for K–Mart, and Schechter now appeals.

On appeal Schechter raises essentially two points: (1) As a matter of law the trial court erred in holding that the lease exonerated K–Mart from the negligence of its employees; and (2) because of error on the part of the trial judge during the course of the trial the judgment should be reversed and the case remanded for a new trial on

---

* Schechter did insure the leased building and received the sum of $1,139,000 from the insur- ance company. Schechter thereafter instituted the present proceedings in his own name.

the issue of liability only. As concerns the second matter, it is apparently Schechter's position that, if his trial had been free of error, the jury might well have found K–Mart's employee guilty of wilful and wanton misconduct, and not just simple negligence, in which event, he asserts, the trial court would have held that under Colorado law the lease provisions did not control. We disagree with both grounds urged here by Schechter as grounds for reversal, and therefore affirm.

■ At the outset we note that in our view the lease provisions relating to damage to the leased premises from fire, and liability therefor, are most clear and not ambiguous. Paragraph 19 states that the tenant shall *not* be liable for any loss or damage resulting from fire, "irrespective of the cause thereof." The "redelivery" clause is consistent with that particular language and provides that on expiration or termination of the lease the tenant shall surrender the leased premises in good order and condition, "except for . . . loss or damage by fire." Then to make it even clearer, if such was necessary, the lease also stated, in affirmative language, that the landlord was to insure the leased premises. That the meaning of these lease provisions was understood by the parties is evidenced by the fact that Schechter, the landlord, did insure the premises. We reject the suggestion that this specific language is somehow rendered ambiguous by another provision in the lease that the tenant shall comply with all duties imposed on him by law. Such general language cannot overcome the specific language in the lease that the tenant is not liable for fire damage, regardless of the cause.

In his brief at page 14 counsel for Schechter concedes that under Colorado law the lease provisions above referred to would exonerate K–Mart from any liability to Schechter for damage resulting from a fire which was caused by the "ordinary negligence" of its employee. We agree. In support thereof, see *James Investment Company v. Diamond Shamrock Corporation,* 36 Colo.App. 281, 541 P.2d 325 (1975) and *Employers Casualty Company v. Wainwright,* 28 Colo.App. 292, 473 P.2d 181 (1970). In the instant case the jury by its answer to the special interrogatory found that K–Mart's employee was guilty of ordinary negligence. Such being the case, the trial court under the authority of the two cases just cited, was fully justified in entering judgment in favor of the tenant, K–Mart.

Counsel would escape the rule of *Diamond Shamrock* and *Wainwright* by asserting that the rule should not be extended to cover conduct which is not only negligent but also constitutes a violation of an ordinance which was intended for protection of the general public. In this regard reliance is placed on the City of Englewood Fire Protection Code which provides as follows:

Section 14.3. Maintenance of Equipment. Sprinkler systems, standpipe systems, fire alarm systems, and other fire protective or extinguishing systems or appliances which have been installed in compliance with any permit or order, or because of any law or ordinance, shall be maintained in operative condition at all times, and it shall be unlawful for any owner or occupant to reduce the effectiveness of the protection so required; except this shall not prohibit the owner or occupant from temporarily reducing or discontinuing the protection where necessary to make tests, repairs, alterations or additions. The Chief of the Bureau of Fire Prevention shall be notified before such tests, repairs, alterations or additions are started unless the work is to be continuous until completion.

Counsel argues that the record conclusively shows a violation of the foregoing ordinance by K–Mart's employee. We are not so persuaded. It is true that, with the aid of hindsight, we now know that K–Mart's employee made an error in judgment when he determined to shut down the sprinkling system in his mistaken belief that the fire had been put out. Whether such constitutes a violation of the ordinance above cited is, in our view, debatable, at best. Certainly we do not read that ordinance as

prohibiting a shutting down of a sprinkling system once the fire is over. Be all that as it may, the jury did *not* find that K–Mart's employee violated a municipal ordinance, and we decline to assume that such was the case. No interrogatory was given the jury, nor was one sought, which would have provided an answer to that question. The jury *did* find that K–Mart's employee was guilty of ordinary negligence. Based, then, on the jury's finding of negligence, the trial court under applicable Colorado law was correct in entering judgment for K–Mart.

By our disposition of this phase of the controversy, we do not wish to be understood as indicating that lease provisions of the type with which we are here concerned would not cover an instance where the tenant violated an ordinance or statute designed to protect the general public. On the record before us, we need not now resolve that particular question.

Schechter alternatively urges as ground for reversal alleged error occurring in the trial of his case. As indicated above, it is his position that if the error which he perceives had not been committed, the jury might have found K–Mart's employee guilty of wilful and wanton conduct in shutting down the sprinkling system before the fire was over. In this regard the trial court was apparently of the view that under Colorado law the lease provisions in the instant case exonerated one from the consequences of his own negligence in causing fire damage to the leased premises, but would not exonerate him if his conduct was wilful and wanton. See *Barker v. Colorado Region-Sports Car Club of America, Inc.,* 35 Colo.App. 73, 532 P.2d 372 (1974). However, we found no such error as would necessitate a second trial of this matter.

Complaint is made that Schechter should have been granted a mistrial when counsel for K–Mart made an improper comment in his opening statement to the jury. The trial court refused to declare a mistrial, though he did instruct the jury to disregard the statement in question. A trial court is in a much better position than an appellate court to assess the impact of any improper conduct of counsel. We are not inclined to disturb his handling of the matter.

It is also asserted that the trial court should have directed the jury to find that K–Mart's employee was negligent, rather than submitting the question to the jury. We find no error in this regard. Similarly, the suggestion that the jury should have been instructed not only on "negligence" and "wilful and wanton conduct," but also on so-called "gross negligence," is in our view without merit.

The jury during its deliberations asked to have the instruction on wilful and wanton conduct reread. The trial court reread the instruction on negligence, and proximate cause, as well as the one on wilful and wanton conduct. In so doing the trial judge did not abuse his discretion.

Evidence concerning the conditions in the K–Mart store prior to the date of the fire was admitted, and such is now assigned by Schechter as error. We have examined the testimony in question, and believe that it was relevant and material to the issues in the case.

Judgment affirmed.