**UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff–Appellant,**

v.

**LET'S FRAME IT, INC., Defendant–Appellee.**

No. 85CA1792.

Colorado Court of Appeals, Div. I.

April 28, 1988.

Rehearing Denied May 19, 1988.

Certiorari Denied Aug. 29, 1988.

Dickinson, Herrick–Stare & Hibschweil-er, P.C., Randall S. Herrick–Stare, Denver, for plaintiff-appellant.

Barrows & Sisun, P.C., Mark A. Sisun, Steven P. Hemmerle, Denver, for defend-ant-appellee.

CRISWELL, Judge.

Plaintiff, United States Fidelity & Guaranty Co. (USF & G), appeals the summary judgment denying its subrogation claim against defendant, Let's Frame It, Inc. (tenant), which claim was based upon allegations that tenant was responsible for a fire that damaged the premises occupied by it, as well as other property owned by tenant's landlord. We reverse and remand for further proceedings.

USF & G was the casualty and fire insurer of the landlord of a shopping center in which the tenant leased space. In 1981, a fire damaged both the premises occupied by tenant and other portions of the center as well. In accordance with the provisions of the policy issued to the landlord, USF & G paid approximately $184,000 to make repairs to the property. Of this amount, approximately $17,000 was spent on repairs to the premises leased by tenant, about $82,000 was spent to repair areas leased to other parties, and the remaining $85,000 was used to repair the damage done to the shopping center's common areas. Claiming that the fire and resulting damage were caused by tenant's negligence, USF & G sought reimbursement for its expenditures from tenant.

The parties agree that, since USF & G is asserting a subrogation claim, it may recover against tenant only if the landlord would have the right to recover against tenant. *See Employers Casualty Co. v. Wainwright*, 28 Colo.App. 292, 473 P.2d 181 (1970). Thus, the ultimate question presented is whether the provisions of the written lease between tenant and its landlord have circumscribed the landlord's right of recovery under the circumstances evidenced here.

In asserting that the lease restricts the landlord's right of recovery, tenant places its principal reliance upon two clauses in the lease. First, the redelivery clause provides that, upon termination of the lease, the tenant agrees to:

"surrender and deliver up the demised premises ... in as good order and condition as when the same were entered upon by tenant, *loss by fire ... excepted.*" (emphasis supplied)

Second, the pro-rata-cost clause requires tenant to pay, as an additional rental, a pro rata share of the landlord's "operating and maintenance costs" for the center. The lease provides that these costs include all of the landlord's expenses in operating and maintaining the shopping center, including, without limitation, a number of specifically enumerated items. Among these costs so enumerated is "the cost of public liability and property damage insurance."

The parties agree that the landlord's premiums for fire and casualty insurance would also be included in the costs to be pro rated. This provision notes, however, that:

"The inclusion of cost of Landlord's insurance in definition of 'operating and maintenance costs' shall not relieve Tenant of maintaining his own insurance coverage."

In asserting that these two provisions were not intended to insulate tenant from responsibility for property damage, either to the leased premises or to other areas, caused by its negligence, USF & G relies upon several other provisions of the lease. Among the provisions relied upon are those that:

—Require tenant to provide public liability insurance for the leased premises and to include the landlord as a co-insured under such policy, and that authorize the landlord, in case of tenant's failure to acquire such insurance, to do so and to charge tenant therefor.

—Make the tenant responsible to repair damage occasioned either to the leased premises or to the common areas "caused by tenant's negligence," and specify that tenant's failure to make such repairs, or to reimburse the landlord therefor, is a material breach of the lease.

—Require tenant to indemnify the landlord from any damage resulting "to any person or property whomsoever or what-soever," resulting from tenant's "use or neglect of the premises...."

—Cause the rent to abate, if the leased premises are damaged by a fire *not* arising from the fault or negligence of tenant.

Tenant argues that (1) the redelivery clause demonstrates an intent to render tenant free from liability for any fire, whatever its cause, damaging the demised premises, and (2) the pro-rata-cost clause has the effect of requiring the landlord to look to its insurance policy as its sole protection against fire damage to any part of its property. These two assertions are each independent of the other; they must, therefore, be separately analyzed.

## I.

A redelivery clause similar to that contained in the lease here under consideration was at issue in *Employers Casualty Co. v. Wainwright, supra.* The landlord's subrogee argued there that, even though the redelivery clause itself did not restrict its exception to fires not caused by the tenant's negligence, such an implied restriction should be read into the provision.

■■ Relying upon that line of cases of which *Rock Springs Realty, Inc. v. Waid,* 392 S.W.2d 270 (Mo.1965) is representative, a division of this court held that, absent express language limiting the breadth of the exception for fire damage, no limitation upon that exception will be implied. Thus, where the redelivery clause excepts damages to the demised premises caused by fire from the tenant's obligation to surrender the property in good condition and where the lease does not otherwise distinguish between fires caused by the tenant's negligence and other fires, the tenant cannot be held liable for damage to the demised premises caused by *any* fire. *See also Schechter v. S.S. Kresge Co.,* 579 F.2d 1231 (10th Cir.1978) (applying Colorado law).

■■ However, since a redelivery clause has applicability only to the premises subject to the lease, that provision cannot affect tenant's liability for damage done to

the landlord's other property. *See Agra–By–Products, Inc. v. Agway, Inc.,* 347 N.W.2d 142 (N.D.1984); *Sannit v. Aarons,* 297 F.Supp. 798 (D.Del.1969).

■ Further, a written agreement must be interpreted so as to give meaning to, and to harmonize, all of its provisions. *Pepcol Manufacturing Co. v. Denver Union Corp.,* 687 P.2d 1310 (Colo.1984). Thus, other provisions of the lease must be examined to ascertain the meaning that the parties intended to give to the redelivery clause. And, when the other provisions of this lease are thus examined, the conclusion becomes manifest that the parties did not intend to immunize tenant from damages caused to the leased premises by its own negligence.

Other provisions of the lease are specific in requiring tenant to repair any damage to the leased premises resulting from tenant's negligence. If tenant fails to make such repairs, the landlord is authorized to do so and to charge tenant for the cost thereof. Failure of tenant to pay such costs is a material breach of the lease. Likewise, the provision for rent abatement where fire damages the leased premises only applies if the fire does not arise from the fault or negligence of tenant.

These other provisions, then, render tenant liable to the landlord for any damage caused by a fire resulting from tenant's negligence, and, in such case, rent for the premises shall not abate during the period of repair. Therefore, if the exception in the redelivery clause is interpreted to apply to all fires, even those caused by tenant's negligence, and if that clause is considered, in light of *Wainwright, supra,* to immunize tenant from liability for such fires, that clause is facially inconsistent with the lease's other provisions upon the same subject. *Cf. James Investment Co. v. Diamond Shamrock Corp.,* 36 Colo.App. 281, 541 P.2d 325 (1975) (unmodified word "fire" used in other provisions, as well as in redelivery clause).

Unlike the *Wainwright* and *James Investment* leases, therefore, a review of the other provisions of the lease at issue demonstrates that the parties intended that tenant should remain responsibile for its negligence. In order to harmonize all of these provisions, we conclude that the fire damage exception in the redelivery clause is applicable only to those fires not caused by tenant's negligence.

Thus, unless it may be said that the pro-rata-cost clause immunized tenant from all claims based upon its negligence, it is liable to USF & G for any damage to the leased premises caused by its negligence.

## II.

■ In two recent decisions, divisions of this court have interpreted written agreements that refer to insurance to reflect the parties' intent to exculpate one, or both, of them, and to require them to look to such insurance as the sole source of protection from damage resulting from the parties' negligence. *Hartford Insurance Co. v. CMC Builders, Inc.,* 752 P.2d 590 (Colo. App.1988); *Steamboat Development Corp. v. Bacjac Industries, Inc.,* 701 P.2d 127 (Colo.App.1985). Tenant asserts that the pro-rata-cost clause of the subject lease also evidences such an intent here. We disagree.

In *Steamboat Development,* the agreement between an owner and its contractor required the owner to provide casualty insurance upon the work to be done to the full value of that work. It also specifically provided that each party waived all rights against the other for damage caused by fire to the extent that the owner's insurance covered the peril. It was held that the agreement "mirrors the parties' intent to provide mutual exculpation from losses covered by fire. . . ."

Likewise, in the *Hartford Insurance* case, the requirement for the owner of property to obtain insurance to cover a specific loss was an exception to a general indemnification agreement given to the owner by its contractor. This court held that the purpose of the exception was to relieve the contractor from liability for the specific peril insured against and to require the owner to protect itself through its purchase of insurance.

However, the lease provisions here differ in a number of significant ways from the agreements involved in *Steamboat Development* and *Hartford Insurance*.

First, this lease contains no exculpatory provisions, except to the extent that the redelivery clause might be so interpreted. We have already concluded that that clause cannot have that effect. Even if we were to reach a contrary conclusion on the meaning of that clause, however, it would still not affect tenant's liability for damage to other premises owned by the landlord.

Second, as our review of the various provisions of the lease has demonstrated, the evident intent of the parties was to require tenant to remain responsible for any damage done to the demised premises or to other areas as a result of its negligence. The provisions delineating tenant's obligation to make repairs expressly negate any assertion that the landlord has agreed to look to the insurance acquired by it as its sole source of reimbursement.

Further, not only does the pro-rata-cost clause *not* specifically refer to any fire and casualty insurance, it also contains no *requirement* that the landlord must obtain insurance of any type. Rather, its plain language merely permits the landlord to assess a pro rata portion of all of its costs to tenant, including a pro rata portion of *all* of the insurance expenses that landlord *chooses* to purchase.

Finally, the tenant is required to obtain its own public liability insurance and to assure that the landlord is covered by such a policy. Such obligation is expressly not affected by tenant's obligation under the pro-rata-cost clause. Yet, tenant's obligation to cover the landlord under its liability policy is inconsistent with the assertion that the landlord agreed to look to its own policy as its only protection.

We find nothing in the pro-rata-cost clause that would justify the conclusion that the parties intended that the landlord would look only to the insurance policies to be acquired by it to protect itself, or that the landlord waived any claim against tenant for negligence resulting in damage to it. This provision, therefore, can furnish no basis for a claim that the landlord has no right of action against tenant.

We conclude that neither of the provisions relied upon by tenant can serve to immunize it from liability to USF & G, assuming, of course, that USF & G can prove that the fire was, in fact, caused by tenant's negligence—an issue that can be determined only from a trial on the merits.

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with the views contained herein.

PIERCE and HUME, JJ., concur.