#24723-rev&rem-O'BRIEN, Circuit Judge
**2008 SD 106**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,                    Plaintiff and Appellant,

    v.

AUTO-OWNERS INSURANCE COMPANY,
SANDRA PIKE, CHRISTOPHER
PIKE, and ASHLEY DEISS.                Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE WILLIAM J. SRSTKA, Jr.
Judge

\* \* \* \*

RONALD A. PARSONS, Jr. and
A. RUSSELL JANKLOW of
Johnson, Heidepriem, Janklow,
Abdallah & Johnson, LLP              Attorneys for plaintiff
Sioux Falls, South Dakota            and appellant.

WILLIAM P. FULLER and
HILARY L. WILLIAMSON of
Fuller & Sabers, LLP                 Attorneys for defendants
Sioux Falls, South Dakota            and appellees.

\* \* \* \*

ARGUED
May 20, 2008

OPINION FILED 11/5/08

#24723

O'BRIEN, Circuit Judge

[¶1.] American Family Insurance (American Family) filed a complaint for a declaratory judgment against Auto-Owners Insurance Company (Auto-Owners). American Family sought a declaration that it had a subrogated interest against an Auto-Owners' homeowners' policy issued to Sandra Pike, Christopher Pike and Ashley Deiss (tenants). The circuit court granted summary judgment to Auto-Owners and tenants (the defendants). American Family appeals. We reverse and remand.

FACTS

[¶2.] The circuit court was presented with a joint stipulation of facts.[1] Donald Babinski owned a rental duplex located at 1026 North Menlo Avenue in Sioux Falls, South Dakota. Babinski purchased a business owners' policy of insurance from American Family to provide coverage for property damage to the rental dwelling on Menlo Avenue. Under the insurance policy, American Family was granted the right of subrogation in order to recover any amounts paid under the policy from those responsible for causing the loss.

[¶3.] On January 28, 2005, tenants signed a lease agreement to rent one unit of the duplex owned by Babinski. The lease agreement contained the following provisions:

---

1. The stipulation of facts included three exhibits: (A) the American Family Business Owners' Policy purchased by the landlord; (B) the Residential Lease Agreement executed between the landlord and the tenants; and (C) the Auto-Owners' Homeowners' Policy purchased by the tenants pursuant to the contractual requirements of their lease.

-1-

2. MAINTENANCE, REPAIRS, AND ALTERATIONS -
Resident agrees: . . . (b) to be responsible for, at Resident's
own cost, any and all breakage or damage done to any
part of the premises, including damages or theft by
Resident's guests to the apartment and common areas of
the building . . .

* * *

H. LIABILITY OF RESIDENT AND MANAGEMENT

1. NON-LIABILITY OF LESSOR – . . . Resident is
required to maintain liability and personal property
insurance during the term of the lease or any subsequent
leases. Proof of insurance is required at the time the lease
is signed.

* * *

[3.] RESIDENT SHALL REIMBURSE MANAGEMENT
FOR – a) any loss, property damage, or cost of repair or
service (including plumbing problems and freezer
punctures) cause[d] by negligence or improper use by
Resident, his/her agents, family or guests . . .

The lease did not contain any provision reserving a right of subrogation in favor of

the landlord's insurer, American Family, nor did it specifically address damage to

the dwelling caused by fire.

[¶4.]       In accordance with the lease, the tenants purchased a homeowners'

insurance policy from Auto-Owners for the rental duplex.  The term of the policy

provided coverage from February 28, 2005 to February 28, 2006.  All three tenants

were covered under the policy.

[¶5.]       On March 1, 2005, an accidental fire occurred when one of the tenants,

Ashley Deiss, took ashes from the fireplace and moved them to a cardboard box

inside a closet in the residence.[2]  As a result of the fire, American Family paid insurance proceeds to Babinski in the amount of $96,959.42 for the damage caused by the fire.  American Family then sought subrogation in this amount against Auto-Owners on the tenants' homeowners' insurance policy.  Auto-Owners denied American Family's subrogation claim.

[¶6.]        American Family subsequently filed a declaratory judgment action seeking a determination of whether it had a subrogated interest against the Auto-Owners policy held by tenants.  The parties entered into a joint stipulation of facts and filed cross-motions for summary judgment.

[¶7.]        The circuit court granted Auto-Owners' motion for summary judgment and issued a memorandum decision.  The circuit court concluded that the South Dakota Supreme Court would adopt the rule first pronounced in *Sutton v. Jondahl* 532 P2d 478 (OklaCivApp 1975).  The *Sutton* rule precludes a landlord's insurer from asserting a subrogation claim against a tenant absent an express agreement to the contrary.  The circuit court found that public policy reasons supported the *Sutton* approach including the legal certainty provided by the rule and the fact that it avoids gamesmanship over the manner in which landlords craft lease provisions. Additionally, the circuit court held that even if it adopted the alternative case-by-case approach, discussed *infra* at ¶ 26, American Family did not have a subrogation right.  This was because the tenants could not reasonably anticipate that the

---

2.     The parties agreed that Deiss was the sole cause of the fire and that Deiss was a named insured on the Auto-Owners' policy.

landlord's insurer could assert a subrogation claim against them if the rental property was destroyed by a fire caused by their negligence.

[¶8.]    American Family appeals raising the following issues:

Whether the circuit court erred in granting summary judgment for the defendants.

Whether the circuit court erred in finding that the lease did not contemplate that the tenant would be liable to a subrogation claim by the landlord's insurer.

## STANDARD OF REVIEW

[¶9.]    The standard of review is well settled in actions where the parties agree that the material facts are not contested but the dispute is centered on the application of substantive law.  "'With the material facts undisputed, our review is limited to determining whether the [circuit] court correctly applied the law.'" Johns v. Black Hills Power, Inc., 2006 SD 85, ¶ 4, 722 NW2d 554, 556 (citation omitted). The standard of review for questions of law is de novo.  Daktronics Inc. v. LBW Tech. Co., 2007 SD 80, ¶ 2, 737 NW2d 413, 416 (citations omitted).

[¶10.]    "'On appeal, this Court can read a contract itself without any presumption in favor of the trial court's determination.'"  A-G-E Corp. v. State, 2006 SD 66, ¶ 15, 719 NW2d 780, 786 (citations omitted).  "Thus, the interpretation of a contract is a question of law, which is reviewed de novo." Id. (citation omitted.)

## ANALYSIS

## ISSUE ONE

[¶11.]    **Whether the circuit court erred in granting summary judgment for the defendants.**

[¶12.]     This is a case of first impression for this Court.  This Court has been asked to decide whether, for subrogation purposes, a tenant is co-insured under his or her landlord's insurance policy absent an express provision in the parties' lease to the contrary.  If the Court decides that the tenant is co-insured under the landlord's policy, an insurer could not bring a subrogation action against a tenant who caused damage to the landlords' insured premises because the right of subrogation cannot arise in favor of an insurer against its own insured.

[¶13.]     "The right to subrogation is not new in South Dakota.  A half century ago, this Court stated: 'It is a well settled rule of law that an insurer is entitled to subrogation, either by contract or in equity for the amount of the indemnity paid.'"  Met Life Auto and Home Ins. Co. v. Lester, 2006 SD 62, ¶ 13, 719 NW2d 385, 387 (citation omitted).  Under South Dakota law, subrogation can arise out of two sources.  *Id.*  "First, the parties can agree to create a contractual right of subrogation.  This is commonly done in insurance policies.  Second, equity can require the creation of subrogation based upon the circumstances, even without a contractual obligation." *Id.*

[¶14.]     American Family contends that it has both a contractual and an equitable right of subrogation against Auto-Owners and the negligent tenants under South Dakota law.

   *Sutton Rule*

[¶15.]     The *Sutton* rule had its genesis in the case of *Sutton v. Jondahl,* 532

P2d at 482. [3] Under the *Sutton* rule, an insurance company providing fire insurance for a dwelling is not allowed to shift a fire loss to an occupying tenant even if the latter negligently caused the fire. *Id.* (citing New Hampshire Ins. Co. v. Ballard Wade, Inc., 404 P2d 674 (Utah 1965)). Subrogation is not available to a landlord's insurer as against a tenant unless the lease explicitly provides otherwise because the tenant and the landlord are implied co-insureds under the landlord's fire insurance policy.

[¶16.] *Sutton*, 532 P2d at 478-79, involved a fire caused by a ten-year-old boy playing with his chemistry set in his family's rental home. The landlord's insurer paid the loss and, as subrogee, brought suit against the father and son. *Id.* The Oklahoma Court of Appeals held that the insurance company had no subrogation rights against the tenant of its policy-holder. *Id.* at 481. The court found that "subrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement

---

3. The *Sutton* rule has been referred to as the majority rule, s*ee, e.g.,* Tri-Par Investments, L.L.C. v. Sousa, 680 NW2d 190, 195 (Neb 2004), and has been followed in at least fifteen jurisdictions. *See, e.g.,* Alaska Ins. Co. v. RCA Alaska Communications, Inc., 623 P2d 1216, 1218 (Alaska 1981); DiLullo v. Joseph, 792 A2d 819 (Conn 2002); Lexington Ins. Co. v. Raboin, 712 A2d 1011, 1016 (DelSuperCt 1998); North River Ins. Co. v. Snyder, 804 A2d 399, 403-04 (Me 2002); Peterson v. Silva, 704 NE2d 1163, 1164 (Mass 1999); New Hampshire Ins. Group v. Labombard, 399 NW2d 527, 531 (MichCtApp 1986); United Fire & Cas. Co. v. Bruggeman, 505 NW2d 87, 89 (MinnCtApp 1993); *Tri-Par Investments*, 680 NW2d at 190; Safeco Ins. Co. v. Capri, 705 P2d 659, 661 (Nev 1985); Community Credit Union v. Homelvig, 487 NW2d 602, 605 (ND 1992); Cambridge Mut. Fire Ins. Co. v. Crete, 846 A2d 521 (NH 2004); *Sutton*, 532 P2d at 482; Dattel Family Ltd. Partnership v. Wintz, 250 SW3d 883 (TennCtApp 2007); GNS Partnership v. Fullmer, 873 P2d 1157, 1163 (UtahCtApp 1994); Cascade Trailer Court v. Beeson, 749 P2d 761, 766 (WashCtApp 1988).

between them to the contrary, comparable to the permissive-user feature of automobile insurance." *Id.* at 482. The *Sutton* rule is "derived from a recognition of a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises-the former owns the fee and the latter has a possessory interest." *Id.*

[¶17.] The Oklahoma Court of Appeals found that when fire insurance is provided for a dwelling, it protects the insurable interests of all joint owners including the possessory interests of a tenant, absent an express agreement by the latter to the contrary. *Id.* The court noted that the cost of the insurance premium is considered in establishing the "rent rate" and, in effect, the tenant is actually paying the premium as part of the monthly rent. *Id.* Moreover, absent an express agreement, "[p]rospective tenants ordinarily rely upon the owner of the dwelling to provide fire protection for the realty (as distinguished from personal property)[.]" *Id.*

> Certainly it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there was such protection it did not inure to his benefit and that he would need to take out another fire policy to protect himself from any loss during his occupancy.

*Id.* A co-insured relationship is established by the sharing of proprietary interests and the expenses associated with protecting them. *United Fire & Cas. Co.*, 505 NW2d at 89.

[¶18.] Other courts, while agreeing with the *Sutton* rule, have expanded upon the rationale for the rule. For example, the Connecticut Supreme Court upheld the *Sutton* rule because of public policy disfavoring economic waste. *DiLullo*, 792 A2d at 822. The court stated that a rule that allocated to the tenant the responsibility of

maintaining sufficient insurance to cover a claim for subrogation by the landlord's insurer would create a strong incentive for tenants to carry liability insurance for the value or replacement cost of the entire building, irrespective of the portion of the building they occupied. *Id.* at 823. The tenant's insurance would duplicate that which the landlord has under his or her insurance policy. *Id.* "Thus, although the two forms of insurance would be different, the economic interest insured would be the same," and would constitute economic waste. *Id. See also Peterson,* 704 NE2d at 1166 ("[i]t surely is not in the public interest to require all the tenants to insure the building which they share, thus causing the building to be fully insured by each tenancy.").

[¶19.] Other courts applying the *Sutton* rule have found that the rule protects the reasonable expectations of the tenant.

> [A] tenant may reasonably expect that his or her rental payments will be used to cover the lessor's ordinary and necessary expenses, including fire insurance premiums. Tenants reasonably expect that, by effectively contributing to the premium payments, they will occupy a position akin to the insured and will be free from tort liability for negligently caused fire damage to the premises[.]

*New Hampshire Ins.*, 399 NW2d at 531. *See also Cambridge Mutual Fire Ins. Co.*, 846 A2d at 523 ("A reasonable residential tenant expects that the landlord has fire insurance to protect the rental property, just as a reasonable insurance company expects to provide coverage for fire damage that may result from the actions of a tenant of the insured.").

[¶20.] Finally, other courts have noted that insurers understand the risk associated with insuring rental property and have adjusted their rates to reflect the

increased risk. In adopting the *Sutton* rule, the Minnesota Court of Appeals found that an "insurer knows the risk it is undertaking when insuring a rental property . . . [and] insures the building for the use for which it is intended." *United Fire & Cas. Co.*, 505 NW2d at 89. An insurer may not have control over who the individual tenants are but it can increase its premiums to reflect increased risks presented by changing tenant use. *Id. See also Cambridge Mutual Fire Ins. Co.*, 846 A2d at 523 ("The insurance company reasonably expects to pay for negligently caused fires, and takes into account that the insured property will be rented to tenants, adjusting their rates accordingly.").

*Anti-Sutton Approach*

[¶21.]        Several courts have rejected the *Sutton* rule and its progeny and have found that an insurer is allowed to bring a subrogation claim against the tenant absent an express or implied agreement precluding such a claim. Rausch v. All-State Ins. Co., 882 A2d 801, 812 (Md 2005).[4] The Arkansas Supreme Court stated that the *Sutton* rule is premised on a legal fiction and found that in the absence of

---

4.        Numerous jurisdictions have rejected the principle underlying the *Sutton* rule. Page v. Scott, 567 SW2d 101 (Ark 1978); United States Fidelity & Guaranty Co. v. Let's Frame It, Inc., 759 P2d 819, 823 (ColoCtApp 1988); Federal Ins. Co. v. Paulk, 325 SE2d 886, 888 (GaCtApp 1985); Neubauer v. Hostetter, 485 NW2d 87, 89-90 (Iowa 1992); New Hampshire Ins. Co. v. Hewins, 627 P2d 1159, 1160-61 (KanCtApp 1981); American Guaranty & Liability Ins. Co. v. Little, 328 So2d 706, 710-11 (LaCtApp 1976); Paramount Ins. Co. v. Parker, 112 So2d 560 (Miss 1959); Zoppi v. Traurig, 598 A2d 19, 21 (NJSuperCt 1990); Galante v. Hathaway Bakeries, Inc., 176 NYS2d 87, 92 (NYAppDiv 1958); Winkler v. Appalachian Amusement Co., 79 SE2d 185, 190 (NC 1953); Wichita City Lines, Inc. v. Puckett, 295 SW2d 894, 898-99 (Tex 1956).

an express or implied agreement there was no reason not to allow a subrogated claim. *Page*, 567 SW2d at 101.[5] The court further stated that:

> The fiction that by paying the rent, the lessee paid the insurance premium is not appropriate. There is no evidence that [the tenant] paid any greater rent because of the insurance than he would have paid had [the landlord] not taken insurance. If the tenant paid the insurance premium, he also paid the taxes on the property and the cost of construction or purchase of the house, not to mention cost of repairs and maintenance. Such a fiction ignores the fact that more often than not the market, *i.e.* supply and demand, is the controlling factor in fixing and negotiating rents.

*Id.* at 103-104.

[¶22.]     The Arkansas court noted that the landlord may recover from his tenant for fire damage caused by the tenant's negligence, and this is so regardless of the existence of insurance. *Id.* at 103. Moreover, the court agreed that the insurer would have no subrogation "if the parties had agreed as a part of the transaction that insurance would be provided for the mutual protection of the parties" or if such an agreement could be implied.[6] *Id.*

---

5.     In *Page*, both the tenant and landlord carried insurance. *Page,* 567 SW2d at 103.

6.     An agreement can be implied:

> when the terms of the lease require the landlord to carry insurance at the expense of the tenant, when the tenant's contractual obligation to return the leased property in good condition excepts loss by fire and when the agreement requires the lessor to carry insurance and use the proceeds for restoration of the property insured.

*Page*, 567 SW2d at 103. (citations omitted).

[¶23.]     Although some treatises acknowledge *Sutton* as a modern trend, at least one criticizes the holding and the trend:

> *Sutton*, the leading modern case denying subrogation of lessees, cites no cases for the proposition that the lessee is a co-insured of the lessor, comparable to a permissive user under an auto insurance policy. Contrary to the court's statement, the fact both parties had insurable interests does not make them co-insureds. The insurer has a right to choose whom it will insure and did not choose to insure the lessees, and under this holding the lessee could have sued the insurer for loss due to damage to the realty, e.g., loss of use if policy provides such coverage.

6A, J.A. Appleman, *Insurance Law and Practice* § 4055 at 78 (2005).

[¶24.]     Iowa is among the jurisdictions that have adopted an anti-*Sutton* approach. In *Neubauer*, 485 NW2d at 87, the court refused to accept that "fire insurance on an entire dwelling includes the interest of both landlord and tenant as a matter of law." *Id*. at 90. "This argument disregards the fact that these are separate estates capable of being separately valued and separately insured." *Id.* A tenant's property interest in a dwelling is not automatically insured under the landlord's policy. *Id.*

[¶25.]     Under the anti-*Sutton* approach, jurisdictions disregard *Sutton*'s reasoning that a co-insured relationship is established. These jurisdictions contend that a tenant is not a co-insured just because the tenant may have an insurable interest or that the rent payment may be used to pay premiums on the policy. "If the tenant *were* a co-insured, he/she would be entitled to some part of the proceeds, which even the *Sutton* followers have not suggested." *Rausch*, 882 A2d at 814. (emphasis original).

*Case-by-case Approach*

[¶26.]     Several jurisdictions have rejected *Sutton*'s categorical rule and instead have applied a flexible case-by-case-approach.  Under the case-by-case approach, the court avoids "making assumptions and adopting fictions that are largely conjectural, if not patently illogical, and instead applies basic contract principles and gives proper credence to the equitable underpinning of the whole doctrine of subrogation."  *Rausch,* 882 A2d at 814-815.

[¶27.]     The case-by-case approach allows the court to examine the lease as a whole in order to ascertain the intent of the parties "as to who should bear the risk of loss for damage to the leased premises caused by the tenant's negligence."  *Tri-Par Investments*, 680 NW2d at 197; *see also* Union Mutual Fire Ins. Co. v. Joerg, 824 A2d 586, 589 (Vt 2003).

[¶28.]     In *56 Associates v. Frieband*, 89 FSupp2d 189 (DRI 2000), the District Court allowed subrogation because the lease did not address the question of fire insurance.  In adopting the case-by-case approach, the court found that the *Sutton* rule would be a departure from well-established principles of Rhode Island law, which construes an insurance policy like any other contract.  *Id*. at 194.  A tenant does not automatically become a co-insured under a landlord's insurance policy because the court must apply the terms of the policy as written and may not read into the policy provisions that are not there.  *Id.*  The Maryland Court of Appeals agreed with this and stated that "courts have no business adding insureds to an insurance policy in order to achieve their perception of good public policy."  *Rausch,*

882 A2d at 815. There is no valid foundation for treating landlords and tenants as co-insureds. *Id.*

[¶29.] In *Rausch*, the court articulated four principles emanating from basic contract and subrogation law that are employed in the case-by-case approach. *Rausch*, 882 A2d at 815. The first principle is that subrogation claims against tenants are not inherently against public policy. *Id.* Equitable principles favor the enforcement of subrogation claims by insurers because these claims "serve to avoid both a double recovery by the landlord and the prospect of a culpable tenant routinely escaping responsibility for his/her negligent conduct." *Id.* The court noted two caveats to this principle. First, there is no right of subrogation unless there is liability by the tenant to the landlord and lease provisions that create or enhance a tenant's liability are subject to normal rules of contract law. *Id.* at 815-816. Second, there can be no subrogation if the lease relieves the tenant of liability for fire loss because there would be no liability to the landlord. *Id.* at 816. Additionally, if the landlord has communicated to the tenant an express or implied agreement to maintain fire insurance on the leased premises, absent some compelling provision to the contrary, the court can conclude that it was reasonably expected that the landlord would look only to the policy, and not to the tenant, for compensation for fire loss. *Id.* Finally,

> [i]f the leased premises is a unit within a multi-unit structure, absent a clear, enforceable provision to the contrary, a court may properly conclude that the parties anticipated and reasonably expected that the landlord would have in place adequate fire insurance covering the entire building and, with respect to damage caused by the tenant's negligence to parts of the building beyond the

> leased premises, would look only to the policy, to the
> extent of its coverage, for compensation.

*Id.*

[¶30.] Of the courts following this approach, most that have denied subrogation have done so because of the existence of specific provisions in the lease, such as a provision obligating the landlord to purchase fire insurance on the premises or a clause excepting fire damage from the tenant's responsibility to maintain or return the property in a good state and condition. *See Union Mut. Fire Ins. Co.*, 824 A2d at 591 (lease required landlord to carry fire insurance); General Mills v. Goldman, 184 F2d 359 (8thCir 1950) (lease included clause exonerating tenant for fire loss). Conversely, subrogation may be appropriate where the lease does not require the landlord to purchase fire insurance or the lease requires the tenants to purchase their own insurance to cover liabilities resulting from their negligence. *See* Tate v. Trialco Scrap, Inc., 745 FSupp 458, 460 (MDTenn 1989) (lease required lessor to purchase insurance coverage on building); Continental Ins. Co. v. Kennerson, 661 So2d 325, 328 (FlaDistCtApp 1995) (lease provided that damage caused by fire "'shall be repaired by and at the expense of Lessor.'"); Safeco Ins. Cos. v. Weisgerber, 767 P2d 271, 272 (Idaho 1989) (lease required tenant to maintain premises in a good state and condition of repair "'damage by . . . fire excepted'") (emphasis original); Rock Springs Realty, Inc. v. Waid, 392 SW2d 270, 271 (Mo 1965) (lease required tenant to maintain premises in good condition, "*loss by fire . . . excepted*")(emphasis original); Agra-By-Products, Inc. v. Agway, Inc., 347 NW2d 142, 144 (ND 1984) (lease required lessor to keep insurance and lessee to reimburse lessor for premiums); United States Fire Ins. Co. v. Phil-Mar Corp., 139

NE2d 330, 333 (Ohio 1956) (lease provided that tenant would pay possible increase in fire insurance premiums due to tenant's activities); Monterey Corp. v. Hart, 224 SE2d 142, 144 (Va 1976) (lease contained "except fire" provision). *See also* Britton v. Wooten, 817 SW2d 443, 446 (Ky 1991) (subrogation allowed because there was no clause requiring purchase of fire insurance by landlord).

[¶31.]    The case-by-case approach is also consistent with the public policy of South Dakota, as articulated by our legislature in state statutes. SDCL 20-9-1 provides for the general proposition that "[e]very person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence." SDCL 43-32-10 specifically addresses damages caused by a lessee's negligence in the context of a lease:

> In every hiring of residential premises, whether in writing or parol, the lessee shall preserve the premises, appliances, appurtenances, and other leased personality in good condition, and repair all deteriorations or damage thereto occasioned by his negligent, willful or malicious conduct or such conduct of persons acting under his direction or control.

[¶32.]    These statutory mandates represent the approved public policy of South Dakota, that no person should escape liability for his own negligence. The *Sutton* rule stands in stark contrast to this public policy, as it could exculpate a lessee's negligence whenever the lessor had insurance, no matter the language of the lease or the intent of the parties to that lease.

[¶33.]    This Court finds and concludes that the case-by-case approach is the best approach to employ in the landlord-tenant context because it applies basic

contract principles. Under this approach, the issue of subrogation is determined by application of contract principles on a case-by-case basis. Subrogation may be denied under the case-by-case approach if the lease expressly requires the landlord to maintain fire insurance or the lease exonerates a tenant from losses caused by a fire. In adopting the case-by-case approach, we have considered the decisions of other jurisdictions and the soundness of their reasoning and their consistency with South Dakota law. As articulated by the Oregon Court of Appeals, "[w]e are not particularly impressed with characterizations of a doctrine as the 'majority' or 'minority'. We will give due consideration to all decisions of other jurisdictions but will be persuaded only by the soundness of their reasoning and their consistency with [our State's] law." Koch v. Spann, 92 P3d 146, 150 n 2 (OrCtApp 2004).

[¶34.]    We reverse the circuit court's adoption of the *Sutton* rule because we reject the notion that a tenant is implied to be a co-insured under a landlord's insurance policy. Rather, we adopt the case-by-case approach as a better reasoned rule that recognizes the intent of the parties under contract law and the equitable underpinning of subrogation.

## ISSUE TWO

[¶35.]    **Whether the circuit court erred in finding that the lease did not contemplate that the tenant would be liable to a subrogation claim by the landlord's insurer.**

[¶36.]    The circuit court found that even if the case-by-case approach was applied, the lease as a whole did not show that it was intended or reasonably anticipated by the parties that the tenant would be liable. We reverse the circuit

court's conclusion and find that it was reasonably anticipated that the tenants could be held liable for damage caused by their negligence.

[¶37.] The lease required the resident to maintain liability insurance during the term of the lease. In this case, the tenants purchased an insurance policy that included coverage for damages resulting from fire. The fact that the tenants purchased an insurance policy that provided fire coverage indicates that they reasonably anticipated that they could be liable for any loss resulting from a fire.

[¶38.] The terms of the lease contract support this argument. Lease provisions stated the resident would be responsible for any and all damage done to any part of the premises and that the resident would reimburse management for any loss or property damage caused by the resident's negligence. The tenant was required to purchase liability insurance. Furthermore, the lease did not contain any provision precluding a subrogation action or a provision requiring the landlord to maintain fire insurance. The fact that the lease did not specifically address fire damage or fire insurance should not defeat the contract's provisions dealing generally with the lessee's obligations, as the provisions of the contract can be read to encompass damage caused by fire.

[¶39.] In this case, the effect of allowing subrogation is merely to determine which of two different insurers should bear the ultimate loss. There has been no authority to show the applicability of the *Sutton* rule to actions between insurers. In this case, it was the tenants' negligence that resulted in the loss, and it is their liability insurer, rather than their landlord's insurer, who should be held responsible for that loss. Indeed, the tenants purchased liability insurance to

insure themselves against just such a loss. Considering the equitable underpinnings of subrogation, those whose actions result in loss should be held responsible for the damage they caused.

[¶40.]    Based upon the facts of this case, it appears the parties did have an understanding that the tenants might be liable for their negligent acts. This understanding is reflected in the fact that the tenants procured fire insurance. Our decision may have been different had the tenants not purchased insurance. Under the case-by-case approach, there may be certain cases where subrogation is not allowed, such as where the lease expressly requires the landlord to maintain fire insurance or the lease exonerates a tenant from losses caused by a fire. These variations demonstrate why the case-by-case approach should be adopted. It is a flexible approach that allows the court to examine the lease as a whole, applying principles of contract law, in order to ascertain the intent of the parties and to determine if subrogation is appropriate in that particular case.

[¶41.]    We reverse and remand.

[¶42.]    GILBERTSON, Chief Justice, MEIERHENRY, Justice, MILLER, Retired Justice, and WILBUR, Circuit Judge, concur.

[¶43.]    O'BRIEN, Circuit Judge, for SABERS, Justice, disqualified.

[¶44.]    MILLER, Retired Justice, for KONENKAMP, Justice, disqualified.

[¶45.]    WILBUR, Circuit Judge, for ZINTER, Justice, disqualified.