DAVIS, Justice,
concurring:
I agree with the majority’s decision to reverse the circuit court’s ruling because the insurer is entitled to maintain a subrogation claim against the tenant’s estate under the facts of the case sub 'judice.-\ However, I depart' from my brethren insofar as their resolution of the instant proceeding fails to explain the process'for resolving such subro-gation issues. Rather than providing a clear and definite roadmap of the analysis to be employed in determining when an insurer is . entitled to subrogation from its insured’s tenant, the majority simply ignores this opportunity to provide guidance to the bench and the bar, instead focusing solely upon.whether the tenant in this case was an insured under his landlord’s Farmers & Mechanics insurance policy. I submit that when determining an insurer’s subrogation rights when its insured has leased premises to a tenant, the reviewing court should employ a case-by-case analysis. A case-by-case evaluation of an insurer’s subrogation rights allows a reviewing court to give full effect to the language employed by the parties in the unique contracts governing their particular dispute: the subject lease agreement and the pertinent policy of insurance. Accordingly, -while I agree with the ultimate decision to reverse the circuit court’s ruling in this case, I concur to explain why the Court should- have adopted the case-by-case approach as the method by which to decide subrogation issues that arise when an insured leases premises to a tenant.
The pivotal issue presented by the case sub judice is whether the insurer herein has *278 a right to subrogation against the estate of its insured’s deceased tenant.
The object of subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. It is an appropriate means of preventing unjust enrichment. The doctrine of subro-gation is applied to subserve the ends of justice, to do equity in the particular case under consideration, and to prevent fraud or relieve from mistake. But, in general, the original right measures the extent of the new right. The surety is entitled to be made whole for the loss but not to make a profit.
23 Richard A. Lord, Williston on Contracts § 61:51 (4th ed.2011) (footnotes omitted). In other words, “[sjubrogation is applicable where a relationship of principal and surety or a relationship of primary and secondary liability exists, and the surety or the person with secondary liability has discharged the debt of the other pursuant to some legal liability.” Ray v. Donohew, 177 W.Va. 441, 449, 352 S.E.2d 729, 737 (1986) (citations omitted). Thus, to ascertain whether such a relationship exists in a case of this nature, it is essential to consider the very contractual agreements establishing the insurer/insured and landlord/tenant relationships because “[t]he right of. subrogation depends upon the facts and circumstances of each particular case. Huggins v. Fitzpatrick, 102 W.Va. 224, 228, 135 S.E. 19, 20 (1926).” Syl. pt. 3, Ray, 177 W.Va. 441, 352 S.E.2d 729. This analysis also is imperative insofar as “[n]o right of subrogation can arise in favor of an insurer against its own insured, since by definition subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty.” Syl. pt. 2, Richards v. Allstate Ins. Co., 193 W.Va. 244, 455 S.E.2d 803 (1995). While the majority correctly answered the preliminary question , of whether the tenant herein was an insured under the insured’s policy of insurance, the majority ended its analysis before it apprised the nature of the contractual relationships of the parties involved in the instant controversy or appreciated the import of whether the tenant’s status as such subjected him to sub-rogation under the terms of the subject contracts.
While several different methods of determining an insurer’s right of subrogation against its insured’s tenant have been developed,[1] the case-by-case approach is the more reasoned and legally sound course.[2] Evaluating each case on its own merits permits a reviewing court to consider the unique contracts establishing the insurer/insured and the landlord/tenant relationships in a given case and to appreciate the nuances that are specific to those particular agreements; by contrast, other methods of analysis employing a blanket'approach and one-size-fits-all standard cannot, by their own terms, give effect to the contracting parties’ intent as expressed by the subject contracts establishing and governing their contractual relationships. Insofar as both an insured/insurer relationship and a landlord/tenant relationship are established by contract, considering the particular language of each such contract is the only way to give full force to the parties’ intent underlying the creation of such relationships. See Mazon v. Camden Fire Ins. Ass’n 182 W.Va. 532, 533, 389 S.E.2d 743, 744 (1990) (“An insurance policy and all rights arising from the policy are controlled by principles of contract.... It is well-established that a contract of insurance is a personal contract between the insurer and the insured named in the policy.” (citations omitted)). See also Napier v. Napier, *279 211 W.Va. 208, 212, 564 S.E.2d 418, 422 (2002) (“The relation of landlord and tenant is created by a contract, either express or implied, by the terms of which one person designated ‘tenant’ enters into possession of the land under another person known as ‘landlord.’” (internal quotations and citation omitted)).
The ease-by-case approach “applies basic contract principles.” American Family Mut. Ins. Co. v. Auto-Owners Ins. Co., 757 N.W.2d 584, 594 (S.D.2008). “Under this approach, the issue of subrogation is determined by application of contract principles on a ease-by-case basis. Subrogation may be denied under the ease-by-case approach if the lease expressly requires the landlord to maintain fire insurance or the lease exonerates a tenant from losses caused by fire.” Id. “Conversely, subrogation may be appropriate where the lease does not require the landlord to .purchase fire insurance or the lease requires the tenants to purchase their own insurance to cover liabilities resulting from their negligence.” Id. at 593 (citations omitted). In other words, the case-by-case approach allows a reviewing “court [to] examine[ ] the lease as a whole to determine the parties’ reasonable expectations as to who should bear the risk of loss when a tenant negligently damages the leased premises,”[3] thus “eschew[ing] presumptions that a tenant is or is not a co-insured of the landlord.” Underwriters of Lloyds of London v. Cape Publ’ns, Inc., 63 So.3d 892, 895 (Fla.Dist.Ct.App.2011). Therefore, the tribunal considering the subrogation issue “avoids ... making assumptions and adopting fictions that are largely conjectural, if not patently illogical, and instead applies basic contract principles and gives proper credence to the equitable underpinning of the whole doctrine of subrogation.” Rausch v. Allstate Ins. Co., 388 Md. 690, 713-14, 882 A.2d 801, 814-15 (2005). See also 56 Assocs. ex rel. Paolino v. Frieband, 89 F.Supp.2d 189, 194 (D.R.I.2000) (recognizing that court is bound to enforce contract as written rather than reading terms into contract that are not included therein and adopting case-by-case approach because it allows court to consider “the terms- of the-lease between the landlord and tenant to see if the insurer, stepping into the landlord’s shoes, may maintain a subro-gation action against the tenant for the tenant’s negligence”); Rausch v. Allstate Ins. Co., 388 Md. at 714, 882 A.2d at 815 (observing that “courts have no business adding insureds to an insurance policy in order to achieve their perception of good public policy” (citation omitted)). •
In sum, “the case-by-case approach [i]s a better reasoned rule that recognizes the intent of the parties under contract law and the equitable underpinning of subrogation.” American Family Mut. Ins. Co., 757 N.W.2d at 594. The case-by-case approach is the most practical method-of evaluating an insurer’s subrogation rights vis-a-vis a tenant of its insured because it fully appreciates and gives full force and effect to the parties’ contractual’ agreements, and this is the method that the majority should have adopted and employed to fully resolve the subrogation issue presented by the case sub judice. Given that the majority nevertheless reached the correct result absent such an analysis, I concur in the majority’s resolution of this ease.

; See, e.g., Sutton v. Jondahl, 532 P.2d 478, 482 (Okla.Civ.App.1975) (espousing view-that "subro-gation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement .between them to the contrary”). See also Fire Ins. Exch. v. Geekie, 179 Ill.App.3d 679, 682, 128 Ill.Dec. 616, 617, 534 N.E.2d 1061, 1062 (1989) (expressly rejecting Sutton approach and instead adopting common law view that, “in the absence of an express agreement to the con-traiy, a tenant is liable for damages to the leased premises resulting from his failure to exercise due care” (citation omitted)).

. See American Family Mut. Ins. Co. v. Auto-Owners Ins. Co., 757 N.W.2d 584 (S.D.2008). For further discussion of the case-by-case approach, see infra.

. Underwriters of Lloyds of London v. Cape Publ'ns, Inc., 63 So.3d 892, 895 (Fla.Dist.Ct.App. 2011) (citations omitted).