IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

NYIA DELOACH, PATRICIA )
TROWERY AND CINCINNATI )
INSURANCE COMPANY, )
                 )
        Plaintiffs, )
                 )
    V. )    C.A. NO. N17C-04-045 CEB
                 )
                 )    CONSOLIDATED MATTERS
MEGHAN BUTTERS HOUSER, )
ESQUIRE, as Administratix of the )
ESTATE OF CHERYL )
SIGVARDSON, )
                 )
        Defendant. )

Submitted: September 19 2018
Decided: November 9, 2018

## ORDER

This 9th day of November, 2018, upon consideration of Defendant's, Meghan Butters Houser, as Administrator of the Estate of Cheryl Sigvardson, Motion for Partial Summary Judgment, it appears that:

1. This is a consolidated action resulting from a fire at an apartment complex. Two of the actions were filed by tenants against the tenant said to be responsible for the fire. A third action was a subrogation case filed by Cincinnati Insurance Company ("Cincinnati"), which seeks to recover payments it made on behalf of its insured, the apartment complex. The fire was allegedly caused by the negligence of

1

one of the tenants, Cheryl Sigvardson. Ms. Sigvardson perished in the fire and suit was brought against the administrator of her estate.

2. The defendant has moved to dismiss the Cincinnati case. She argues that it is settled Delaware law that a tenant is a "co-insured" under a landlord's fire insurance policy and that the insurer may not obtain subrogation against a co-insured.

3. In order for Cincinnati to prevail, it must distinguish this case from the case of *Lexington Ins. Co. v. Raboin.*[1] This is so because of the remarkable factual similarities between *Lexington* and this dispute.

4. In *Lexington*, the defendant Raboin was a tenant of an apartment complex insured by Lexington when, it was alleged, he caused a fire resulting in over $700,000 in damages to the apartment complex. Lexington paid on the claims and sought subrogation against Raboin, with Raboin defending on the grounds that Lexington could not seek subrogation against a co-insured.

5. The issue in *Lexington*, as it is here, was whether the negligent, fire-starting tenant of an apartment complex is a co-insured of the landlord on a landlord's fire insurance policy, absent some express provisions to the contrary.

6. In Judge Del Pesco's ruling in *Lexington*, she surveyed the law of multiple jurisdictions in holding that the "trend of modern jurisprudence holds that fire

---

[1] 712 A.2d 1011 (Del. Super. 1998) *aff'd*, 723 A.2d 397 (Del. Super. 1998).

2

insurance secured by the landlord has been obtained for the mutual benefit of landlord and lessee."[2] There are many sound policy considerations supporting this rule: each tenant cannot reasonably be expected to purchase their own insurance for damage to a multi-million dollar apartment complex, the tenant's only insurable interest being in his own apartment, and landlords are better able to insure the whole premises and pass the cost of such insurance on to all tenants in rent.

7. The *Lexington* Court expressed its holding thus: "in the absence of an express agreement or provision in the lease that would place liability on the tenant for the tenant's negligence in causing the fire, the landlord's carrier cannot obtain subrogation against the tenant."[3] This remains the law of Delaware.

8. To distinguish the *Lexington* holding, Cincinnati directs the Court to various lease provisions concerning the tenant's obligation to return the property in good condition, to pay for damages in excess of normal wear and tear, and to pay for any damages to the landlord's property caused by the tenant or his relatives or guests. Each of these provisions, however, deal with subjects far afield of loss caused by fire due to the negligence of the tenant. They hardly qualify as an "express agreement" shifting the risk of fire loss to the tenant. Indeed, the only language that even deals with fire loss merely sets forth the tenant's available remedies to abrogate

---

[2] *Id.* at 1015.

[3] *Id.* at 1016.

3

the lease under the landlord-tenant code in the event of a fire. None of the provisions to which the Court was directed satisfy *Lexington's* mandate that a risk-shifting provision placing the risk of loss by fire to the rental unit or the whole property caused by the tenant's negligence be stated clearly and unequivocally in the lease.

9. The rule adopted in *Lexington* is referred to as the "*Sutton* Rule," from its namesake decision, *Sutton v. Johdahl.*[4] And the Court would be remiss if we did not acknowledge that there are differences of opinion in the decisions of the various states whether the *Sutton* rule is good policy.[5] At the risk of irrelevancy, the Court here reaffirms its belief that *Sutton* and *Lexington* express the better rule that residential tenants should be considered co-insureds under a landlord's policy, absent specific and explicit language shifting the risk of fire loss to the tenant. The Court finding no such specific and explicit language in the lease in question here, must dismiss Cincinnati's subrogation action.

Defendant's Motion for Partial Summary Judgment is therefore **GRANTED.**

**IT IS SO ORDERED.**

Charles E. Butler, Judge

---

[4] 532 P.2d 478, 482 (Ok. Ct. App. 1978).

[5] *See generally, American Family Mut. Ins. Co. v. Auto-Owners Ins. Co.* 757 N.W. 2d 584, 589, nn. 3-4 (S. D. 2008) (collecting state law cases that have adopted or repudiated the *Sutton* Rule).

4